ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JEVON WILLIAMS, MITCHELL MARTINEZ,
DIMITRIJE ZIVKOVIC, and DERRICK ADAMS
individually and on behalf of all others similarly
situated,

                              Plaintiffs,

-against-

MOVAGE, INC., BAJO VUJOVIC, and
CHRISTIAN "DOE"

                              Defendants.

---------------------------------------------------------------X

**Docket No:**

**COLLECTIVE/CLASS ACTION**

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiffs Jevon Williams ("Williams"), Mitchell Martinez ("Martinez"), Dimitrije

Zivkovic ("Zivkovic"), and Derrick Adams ("Adams") (collectively "Plaintiffs"), on behalf of

themselves and on behalf of all others similarly situated, by and through their attorneys, Robert

Wisniewski P.C. and Firestone & Breud, P.L.L.C., as and for their complaint against Defendants

Movage, Inc. ("Corporate Defendant"), Christian "Doe" ("Christian"), and Bajo Vujovic

("Vujovic") ("Christian",and  "Vujovic", collectively the "Individual Defendants"), state as

follows:

1

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and all others similarly situated to recover unpaid wages, unpaid promised wages, liquidated damages and reasonable attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 et seq. ("FLSA"), Articles 6, 8, and 19 of the New York Labor Law and the various wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL"), and the common law of the State of New York.

2.      Plaintiffs also bring this action against Defendants on behalf of themselves and on behalf of all others similarly situated for Defendants' failure to comply with the NYLL §195, which as of February 1, 2011 has mandated that employers, Defendants included, provide at the time of hire, and on an annual basis, wage notices during the period of employment of an employee which specifies, among others, the employee's wage rate, the frequency of wage payments, the designated pay day and other information set forth in the statute. Plaintiffs seek statutory weekly damages of either $25.00 or $50.00 as the case may be up to a maximum of $2,500.00 or $5,000.00, as the case may be per employee, as well as other damages and attorney fees and costs and disbursements.

3.      Plaintiffs and others similarly situated worked as drivers and driver helpers for Defendants' moving business.  Defendants refused to pay Plaintiffs and others similarly situated for all of the hours they worked at either their regular wage or promised wage, resulting in an average hourly rate for Plaintiffs and others similarly situated that was

2

below the minimum wage.  When Plaintiffs complained about Defendants' illegal wage and hour practices, they were berated and verbally abused by Defendants.

**PARTIES, JURISDICTION AND VENUE**

4. Plaintiff Williams is a resident of the State of New York, Kings County.

5. Plaintiff Martinez is a resident of the State of New York, Bronx County.

6. Plaintiff Zivkovic is a resident of the State of New York, Queens County.

7. Plaintiff Adams is a resident of the State of New York, New York County.

8. The Corporate Defendant was and still is a domestic business corporation organized under and existing by virtue of the laws of the State of New York, with its principal place of business at 135 Lincoln Avenue, Bronx, New York, 10454.

9. Upon information and belief, Defendant Vujovic is a resident of the State of New York, Bronx County.

10. Upon information and belief, Defendant Christian is a resident of the State of New York.

11. The Individual Defendants are owners, majority shareholders, officers, directors, and/or managers of the Corporate Defendant, and as some of the ten largest shareholders are individually responsible for unpaid wages under the New York Business Corporation Law. **(Exhibit 1)**

12. Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that the employees of Defendants travel and move goods between states and operate vehicles manufactured outside of New York that have moved in interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

13.  This Court has personal jurisdiction over the Corporate Defendant in that it is incorporated in the State of New York.

14.  This Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York, and/or they maintain continuous contacts with New York and transact a substantial amount of business in New York.

15.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA and 28 U.S.C. §1337 (Regulation of Commerce). This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

16.  Venue is proper pursuant to 28 U.S.C. §1391(b), because Defendants reside in New York and/or the events giving rise to the claims herein occurred in New York.

## JURY DEMAND

17.  Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTS

18.  Defendants own and operate a moving business that provides residential and commercial moving services to customers nationwide and internationally.

19.  In or about February 2014, Plaintiff Williams entered into an oral agreement with Defendants pursuant to which Williams agreed to work for Defendants as a foreman for a percentage commission, which fluctuated based on the job type and work orders done per day. In or about July 2014, Defendants switched from a commission based pay system to an hourly pay system without Williams' knowledge. As per the new pay system, Williams

was to be paid $11.00 per hour, for each hour worked. Williams worked for Defendants pursuant to the new pay system until approximately August 2014, when he received a $3 raise, which he maintained until his termination in or about mid-May 2015.

20.     On or about mid-March 2014, Plaintiff Martinez entered into an oral agreement with Defendants pursuant to which Martinez agreed to work for Defendants as a driver for a percentage commission, which fluctuated based on the job type and work orders done in the day. In or about July 2014, Defendants switched from a commission based pay system to an hourly pay system, without Martinez's knowledge. As per the new agreement, Martinez was to be paid $12.00 per hour for each hour worked.

21.     Defendants often switched  Martinez's position to driver's helper, and on those occasions would lower his hourly wage to $10.00 per hour, without notifying Martinez.

22.     On or about December 23, 2014, Martinez was involved in a car accident and did not return to work until January 17, 2015.

23.     On or about end of March 2015, Martinez voluntarily terminated his employment.

24.     On or about the beginning of June 2014, Plaintiff Zivkovic entered into an oral agreement with Defendants pursuant to which Zivkovic agreed to work for Defendants as a helper for a hourly wage of $9.00 per hour for each hour worked.

25.     Defendants promised to increase Zivkovic's hourly wage to $10.00 per hour within two weeks.

26.     Defendants paid Zivkovic his weekly wage in cash and refused to give him a pay stub.

27.     Defendants immediately paid Zivkovic using a commission based pay system without his knowledge.

5

28.   When Zivkovic complained about the commission payments, Defendants said "This is how it works here. Some jobs are commission based and some are hourly. Just continue to work."

29.   Defendants continued to pay Zivkovic in commissions.

30.   On or about end of July 2014, Zivkovic voluntarily terminated his employment.

31.   On or about end of November 2014, Plaintiff Adams entered into an oral agreement with Defendants to perform tasks as a driver for an hourly wage of $10.00 per hour, for each hour worked.

32.   On or about January 2015, Adam's position changed to helper. Adam received a dollar raise on or about end of April 2015, beginning May.

33.   On or about June 2015, Adams voluntarily terminated his employment.

***Facts Regarding Defendants' Wage and Hour Violations***

34.    Plaintiffs' responsibilities as drivers and driver helpers included driving the company truck and accompanying other drivers, loading and off-loading trucks and tractor-trailers, packing and preparing items for transport, and delivering items to the customers' destinations.

35.   Plaintiffs' schedules varied, depending on the season and the work orders provided for that day.

36.   During the winter season, Plaintiffs and others similarly situated typically reported to Defendants' warehouse each day at 7:30 AM. and worked until approximately 5:00 PM. Plaintiffs worked three to four days a week, for a total of 28.5 to 38 hours a week.

37.   During the winter season, Defendants only paid Plaintiffs for approximately 19 hours per

6

week.

38.    During the spring and fall seasons, Plaintiffs and others similarly situated typically reported to Defendants' warehouse each day at 7:30 AM., and worked until approximately until 6:00 PM. Plaintiffs worked five days a week for a total of at least 52.5 hours a week.

39.    During spring and fall seasons, Defendants only paid Plaintiffs for approximately 32.5 hours per week.

40.    During the summer season, from May until September,  Plaintiffs and others similarly situated typically reported to Defendants' warehouse each day at 7:30 AM. and worked approximately until 9:00 PM. Plaintiffs worked seven days a week, for a total of at least 94.5 hours a week.

41.    During the summer season, Defendants only paid Plaintiffs for approximately 48.5 hours per week.

42.    During the summer season, at least three to four times a month, Plaintiffs would have to work from 7:30 AM until 1:00 AM.

43.    Plaintiffs and Defendants' other employees usually departed the warehouse at 8:00 AM, traveling to destinations in the greater Long Island and New York City areas, as well as other locations as far away as Albany, Boston, Baltimore, Philadelphia, Los Angeles, and others.  Once they arrived at the destination, they  would unload and deliver the customer's items.  After unloading and delivery was completed, Plaintiffs and others would drive the trucks back to Defendants' warehouse.

44.    Defendants only paid Plaintiffs from the time they arrived at a client's location to the moment they left.

45.   Defendants did not pay Plaintiffs for hours they spent traveling to the warehouse in the morning to pick up the truck, receive instructions and load materials, such as blankets, tapes and cardboard boxes.

46.   Defendants also failed to pay Plaintiffs in the evenings, when they left a client's location and drove back to the warehouse.

47.   Defendants also failed to pay Plaintiffs for travel from one job to another on days when Plaintiffs had to do two moves in a day.

48.   Upon information and belief, Defendants failed to pay Plaintiffs for approximately 46 hours worked per week.

49.   On November 10, 2014 until November 17, 2014, Plaintiff Williams was involved in a business trip to Los Angeles, California, in connection with which Williams and Defendants had a separate oral agreement in regards to the pay rate for the trip. The terms of the agreement were that Defendants would pay Williams $14.00 an hour for the entire eight days of the trip, for every hour of the trip, including all rest periods. In addition, Defendants promised to pay Williams for three meals a day for the entire duration of the trip, for Williams' hotel fees, as well as baggage fees. However, Williams was paid only $1,050 for the six days at approximately 75 hours. Williams was not paid for rest hours and was not reimbursed for his meals or baggage fees.

50.   Plaintiffs frequently complained to other employees and representatives of the Corporate Defendant, including the Individual Defendants, that they were not being paid for all of their hours of work.

51.   Following the complaints, Plaintiffs would be berated and verbally abused by Defendant

Christian who would often say "That's too fucking bad. That's how it works here."

*Facts Relating to Unlawful Deductions for Tickets and Tolls*

52.    NYLL § 193 permits only deductions from an employee's paycheck which are "expressly authorized in writing by the employee and are for the benefit of the employee," and prohibits an employer from requiring an employee to make any payments "by separate transaction unless such charge or payment is permitted as a deduction from wages . . ."

53.    On or about February 2015, Plaintiffs Williams and Martinez were dispatched to Boston, Massachusetts for a job order. During the trip, Defendants failed to provide Plaintiffs with a commercial GPS. Plaintiff Martinez used his personal GPS, as he often had done in the past, to navigate to the location of the job site. Martinez  took the route indicated by the GPS, paying required tolls along the route.

54.    Upon returning from the trip, Defendants deducted toll payments from Plaintiff Martinez's paycheck without his permission. In addition to deducting tolls from Plaintiff Martinez's paycheck, Defendants also docked three days pay from both Plaintiffs.

55.    Defendants made other unlawful deductions from the paychecks of Plaintiffs, such as to pay fines for tickets for violations of traffic and parking laws and similar infractions.

56.    None of the Plaintiffs expressly agreed to these unlawful deductions in writing, and these deductions were not for their benefit.

57.    Defendants' deductions and demands for payment for tickets were done with Defendants' knowledge of their impropriety, and were intentional and willful.

*Class Allegations Relating to Defendants' Violations of NYLL § 195.1*

58.    In accordance with the NYLL §195.1, which is operative as of January,  2011, at the time

of hire, and on an annual basis, Defendants had to present for signature to each employee a wage notice, which had to contain the following wage rate information:  (i) the basis of the employee's wage rates, e.g., by the hour, shift, day, week, salary, piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number (the "Wage Notice").

59. Plaintiffs never received and never signed the Wage Notice and never received any other documents which might show the information required by NYLL §195.1.

60. Upon information and belief, Defendants never presented the Wage Notice to any of the Corporate Defendant's employees.

61. Defendants were aware or should have been aware that this practice violated NYLL.

62. Upon information and belief, Defendants continue to violate  NYLL §195.1 to date.

### *Defendants' Conduct was and is Willful and Ongoing*

63. Defendants as employers have certain statutory obligations towards employees, including the requirement to pay employees at or above the minimum wage, and to pay employees for all of the hours they work.

64. Defendants were aware of their statutory requirements, including the requirement to pay Plaintiffs and others similarly situated at or above the minimum wage, and to pay for each hour worked.

65. However, despite knowledge of their obligations, Defendants failed to pay Plaintiffs and

others similarly situated all of the wages to which they were entitled.

66.  As such, the various violations of the law which are alleged herein were committed

knowingly, willfully, and intentionally by Defendants.

67.  At a minimum, Defendants failed to take the necessary steps to ascertain their duties with

respect to the payment of wages to their employees.

68.  Upon information and belief, this conduct is ongoing, as Defendants continue to engage

in the wrongful conduct described herein.

### *Facts Regarding the Defendants as Joint Employers*

69.  At all relevant times herein, the Individual Defendants had operational control over the

Corporate Defendant.

70.  At all relevant times herein, the Individual Defendants conducted business as the

Corporate Defendant.

71.  At all relevant times herein, the Individual Defendants acted for and on behalf of the

Corporate Defendant, with the power and authority vested in them as owners, officers,

agents, and employees of the Corporate Defendant, and acted in the course and scope of

their duty and function as agents, employees, and officers of the Corporate Defendant.

72.  At all relevant times herein, the Individual Defendants directly managed, handled, or were

otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or

issuing checks for Plaintiffs and others similarly situated.

73.  At all relevant times herein, the Individual Defendants had control over the conditions of

employment of Plaintiffs and others similarly situated, including their hiring and firing,

their work schedules, the rates and methods of payment of their wages, and the

maintenance of their employment records.

74.    As a matter of economic reality, all Defendants are joint employers of Plaintiffs and

others similarly situated; and, as a result, all Defendants, individually and collectively,

and jointly and severally, are liable for all claims made herein.

***Facts Relating to Piercing the Corporate Veil***

75.    Upon information and belief, the Corporate Defendant is wholly owned by the Individual

Defendants.

76.    Upon information and belief, in conducting the affairs of the Corporate Defendant, the

Individual Defendants failed to comply with the required corporate formalities, including

recordkeeping, governance requirements, and other formalities.

77.    Upon information and belief, the Individual Defendants used the assets of the Corporate

Defendant as their own, and otherwise commingled personal assets with the assets of the

Corporate Defendant.

78.    As alleged herein, the Individual Defendants used the Corporate Defendant in order to

circumvent a statute or statutes, or accomplish other wrongful acts or in furtherance of

other wrongful or inequitable purposes.

79.    The Corporate Defendant is the alter-ego of the Individual Defendants; and, as will be

established at trial, for the purpose of the claims made by Plaintiffs and others similarly

situated herein, the Corporate Defendant has no separate legal existence from the

Individual Defendants.  As such, the Corporate Defendant and the Individual Defendants,

individually and collectively, and jointly and severally, are liable for all claims made

herein.

## COLLECTIVE ACTION ALLEGATIONS

80.   Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by Defendants and did not receive the compensation required by the FLSA in respect to their work for Defendants.

81.   Upon information and belief, this class of persons consists of not less than eleven persons.

82.   There are questions of law and fact common to the class, specifically whether the employment of Plaintiffs and others similarly situated by Defendants is subject to the jurisdiction and wage requirements of the FLSA.  Only the amount of individual damages sustained by each former or current employee will vary.

83.   Plaintiffs and Defendants' other employees are similarly situated insofar as Defendants instituted a policy to not pay Plaintiffs and others proper wages under the FLSA.

84.   Plaintiffs bring the first claim for relief herein on behalf of themselves individually and all others similarly situated as a collective action pursuant to the FLSA, in respect to all claims that Plaintiffs and all others similarly situated have against Defendants as a result of Defendants' violations under the FLSA.

## CLASS ACTION ALLEGATIONS

85.   Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by Defendants as drivers or driver helpers, but did not receive the compensation required by the NYLL and common law of the State of New York in respect to their work for Defendants.

86.   Upon information and belief, this class of persons consists of not less than eleven

persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

87.   There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of Plaintiffs and others similarly situated by Defendants is subject to the jurisdiction and the wage requirements of the NYLL and the common law of New York. Only the amount of individual damages sustained by each class member will vary.

88.   The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

89.   Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

90.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

91.   Plaintiffs bring the first, second, third, fourth and fifth claims for relief herein on behalf of themselves individually and all others similarly situated as a class action pursuant to Rule 23, in respect to all claims that Plaintiffs and all others similarly situated have against the Defendants as a result of Defendants' violations of the NYLL and the common law of the State of New York.

92.   Plaintiffs also bring this action on behalf of themselves and all other persons who were or are employed by Defendants as drivers or driver helpers, but did not receive the wage notice required by NYLL §195(1).

14

93.     There are questions of law and fact common to the class which predominate over any
        questions affecting only individual members, specifically: whether Defendants presented
        the Wage Notice to Plaintiffs and each class member on an annual basis, as required by
        §195(1) of the NYLL Only the amount of individual damages sustained by each class
        member will vary.

94.     The claims of Plaintiffs are typical of the claims of the above-described class in that all of
        the members of the class have been similarly affected by the acts and practices of the
        Defendants.

95.     Plaintiffs will fairly and adequately protect the interests of the members of the class, in
        that their interests are not adverse to the interests of the other members of the class.

96.     A class action is superior to other available methods for the fair and efficient adjudication
        of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

97.     Plaintiffs first, second, third, fourth and fifth claims for relief herein on behalf of
        themselves individually and all others similarly situated as a class action pursuant to Rule
        23, in respect to all claims that Plaintiffs and all others similarly situated have against the
        Defendants as a result of Defendants' violations of the NYLL and the common law of the
        State of New York.

### FIRST CLAIM FOR RELIEF
### Class Action Claim
### (Breach of Contract against all Defendants)

98.     Plaintiffs repeat and reallege each and every allegation previously made as if fully set
        forth herein.

99.     Plaintiffs entered into an oral contract with Defendants to supply work as drivers and

driver helpers in furtherance of Defendants' moving business exchange for hourly wages.

100.    Plaintiffs satisfactorily supplied labor and complied with the terms of his employment

agreement  with Defendants, and was therefore entitled to wages they rightfully earned

while working for the Defendants.

101.    Defendants failed or refused to pay Plaintiffs the wages for all hours worked to which

they were entitled under their respective employment agreements.

102.    Defendants' failure or refusal to pay Plaintiffs the wages to which they were entitled

under their employment agreement constituted a breach of Plaintiffs's employment

agreement.

103.    By virtue of the foregoing breaches of contract by Defendants, Plaintiffs have been

damaged in an amount to be proven at trial, based upon an accounting of the amount

Plaintiffs should have been paid as contemplated by their employment agreement, less

amounts actually paid to Plaintiffs, together with an award of interest, costs,

disbursements, and attorneys' fees.


**SECOND CLAIM FOR RELIEF**
**Class Action Claim**
**(Quantum Meruit against All Defendants)**

104.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth

herein.

105.    Plaintiffs and others similarly situated performed work and services for Defendants in

good faith.

106.    Defendants, by employing Plaintiffs and others similarly situated, voluntarily accepted

their services and benefitted therefrom.

107.    Plaintiffs and others similarly situated had a reasonable expectation of fair payment for

their labor, but Defendants failed to remunerate Plaintiffs and others similarly situated for

all of the work they performed.

108.    Accordingly, Plaintiffs and others similarly situated are entitled to payment equal to the

fair value of the uncompensated work they provided for Defendants, together with an

award of interest, costs, disbursements, and attorneys' fees.

### THIRD CLAIM FOR RELIEF
### Class Action Claim
### (Violations of NYLL Minimum Wages against All Defendants)

109.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth

herein.

110.    Pursuant to the NYLL, Plaintiffs and others similarly situated were entitled to certain

hourly minimum wages, all of which Defendants intentionally and willfully failed to pay

in violation of such laws.

111.    For Plaintiffs and others similarly situated, the total weekly wage they were paid, divided

by the total number of hours they worked per week, was less than the minimum wage

mandated under the NYLL.

112.    Plaintiffs and others similarly situated regularly worked several hours per week for which

they were not paid any compensation at all.

113.    Furthermore, Plaintiffs and others similarly situated did not receive the proper wages to

which they were entitled.

114.    Accordingly, Plaintiffs and all others similarly situated seek a judgment for unpaid

regular, and unpaid promised wages, such sums to be determined at trial upon an

accounting of the hours worked by, and wages paid to, Plaintiffs and all others similarly

situated, along with an award of liquidated damages, interest, attorneys' fees, and costs, as

provided under the NYLL.

**FOURTH CLAIM FOR RELIEF**
**Class Action Claim**
**(Unpaid Promised Wages Pursuant to NYLL against Defendants)**

115.  Plaintiffs repeat and reallege each and every previous allegation as if fully set forth

herein.

116.  Plaintiffs' promised wages constitute "wages" within the meaning of NYLL §190 (1).

117.  Defendants, in withholding promised wages without cause have violated the NYLL.

118.  As a consequence, Plaintiffs are entitled to all promised wages for all hours worked.

**FIFTH CLAIM FOR RELIEF**
**Class Action Claim**
**(Violation of NYLL§195.1 against all Defendants)**

119.  Plaintiffs repeat and reallege each and every allegation previously made herein.

120.  NYLL §195.1 mandates as of January 2011 that each employee employed by Defendants

on an annual basis receive for signature a Wage Notice, which had to contain the

following wage rate information:  (i) the basis of the employee's wage rates, e.g., by the

hour, shift, day, week, salary, piece commission or otherwise; (ii) the overtime rate of

pay, if the employee is subject to overtime regulations;  (iii) whether the employer will

claim allowances such as tips, meals, and/or lodging against the minimum wage;

(iv) the employer's name and any "doing business as" names;  (v) the employer's

address and mailing address, if different; and (vi) the employer's telephone number.

121.   Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by the Corporate Defendant but did not receive the Wage Notice as required by the NYLL §195.1, and did not receive any other documents which might show the information required by NYLL §195.1.

122.   Upon information and belief, Defendants' violations are continuing through the present.

123.   As a result of Defendants' violation of NYLL §195.1, Plaintiffs and others similarly situated are entitled to statutory damages of $25 or $50 per week up to $2,500.00 or $5,000.00 as provided for by NYLL §195.1.

**SIXTH CLAIM FOR RELIEF**
**Collective Action Claim**
**(FLSA Minimum Wages against All Defendants)**

124.   Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

125.   Pursuant to the FLSA, Plaintiffs and all others similarly situated were entitled to certain hourly minimum wages, all of which Defendants intentionally and willfully failed to pay in violation of such laws.

126.   For Plaintiffs and others similarly situated, the total weekly wage they were paid, divided by the total number of hours they worked per week, was less than the minimum wage mandated under the FLSA.

127.   Accordingly, Plaintiffs and others similarly situated seek a judgment for unpaid wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs and others similarly situated, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided for by the FLSA.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against Defendant as follows:

1. On the first claim for relief, an accounting of the amount Plaintiffs should have been paid as contemplated by their employment agreement;

2. On the second claim for relief,  payment equal to the fair value of the uncompensated work Plaintiffs provided for Defendants;

3. On the third claim for relief, unpaid minimum wages pursuant to NYLL;

4. On the fourth claim for relief, unpaid promised wages pursuant to NYLL;

5. On the fifth claim for relief, statutory damages of $25.00 or $50.00 per week up to $2,500 or $5,000 as provided for by NYLL §195.1;

6. On the sixth claim for relief, unpaid minimum wages  pursuant to FLSA;

7. Liquidated damages pursuant to NYLL;

8. Liquidated damages pursuant to FLSA;

9. Pre-judgment interest;

10. Back pay and front pay; and

11. Plaintiffs' reasonable attorneys' fees and costs;

**[No More Text On This Page]**

Together with such other and further relief as the Court deems proper.

Dated: New York, New York
      April 12, 2017

                                Firestone & Breud, P.L.L.C.

By:             /s/
             Albert Adam Breud, II
             356 Veterans Memorial Highway, Suite 3
             Commack, New York 11725
             (631) 543-3030, ex. 2
             breudlaw@optonline.net
             Attorneys for Plaintiffs


             Robert Wisniewski P.C.

By:             /s/
             Robert Wisniewski
             225 Broadway, Suite 1020
             New York, New York 10007
             (212) 267-2101
             rw@rwapc.com
             Attorney for Plaintiffs