UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
JEVON WILLIAMS, MITCHELL MARTINEZ,                    :
DIMITRIJE ZIVKOVIC, and DERRICK                       :
ADAMS,                                                :
                                                      :
                                    Plaintiffs,       :
                                                      :
                     v.                               :
                                                      :
MOVAGE, INC., BAJO VUJOVIC, and                       :
CHRISTIAN DOE,                                        :
                                                      :
                                    Defendants.       :
                                                      :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  April 24, 2018

17 Civ. 2628 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Jevon Williams, Mitchell Martinez, Dimitrije Zivkovic, and Derrick Adams bring this action on behalf of themselves and a putative collective action on behalf of similarly situated persons, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL"), Art. 6, §§ 190-199-a.  Plaintiffs allege that Defendant Movage, Inc. ("Movage"), and its owners, Defendants Baju Vujovic and Christian Doe (together with Movage, "Defendants"), engaged in unlawful employment practices, including failure to pay the minimum hourly wage, failure to provide requisite wage notices, and unlawful deductions from Plaintiffs' paychecks.

Plaintiffs now move for conditional certification under § 216(b) of the FLSA, and for court-facilitated notice to potential opt-in plaintiffs.  As to the latter, Plaintiffs request that the Court: (i) direct Defendants to produce a list of

employees for the six years preceding this action; (ii) authorize service by mail and email, followed by a 90-day opt-in period; (iii) authorize service of a reminder letter; and (iv) order Defendants to post the notice and consent on a bulletin board or other conspicuous location at the Movage warehouse.

Defendants oppose the motion, arguing that Plaintiffs have failed to make the requisite factual showing that they and potential plaintiffs were victims of a common policy or plan. Defendants object, in the alternative, to various aspects of Plaintiffs' proposed notice, including the six-year notice period, the 90-day opt-in period, the request for a reminder notice, the reference in the proposed notice to "double liquidated damages," and the request that Defendants post the notice in the Movage warehouse.

For the reasons set forth below, the Court grants Plaintiffs' motion for conditional certification, and approves court-facilitated notice, albeit only in the manner described herein.

## BACKGROUND[1]

### A.   Factual Background[2]

Defendants own and operate a moving business, located at 135 Lincoln Avenue in the Bronx, New York, that services residential and commercial

---

[1]   The facts in this Opinion are drawn from Plaintiffs' Complaint ("Compl." (Dkt. #1)); the declaration of Jevon Williams in support of Plaintiffs' motion ("JW Decl." (Dkt. #29)); the declaration of Mitchell Martinez in support of Plaintiffs' motion ("MM Decl." (Dkt. #30)); the reply declaration of Jevon Williams ("JW Reply Decl." (Dkt. #40)); and the reply declaration of Mitchell Martinez ("MM Reply Decl." (Dkt. #41)). For ease of reference, the Court refers to Plaintiffs' opening brief as "Pl. Br." (Dkt. #31); Defendants' opposition brief as "Def. Opp." (Dkt. #32); and Plaintiffs' reply brief as "Pl. Reply" (Dkt. #35).

[2]   Because Plaintiffs bear the burden on a § 216(b) motion, the Court focuses primarily on Plaintiffs' account of the facts at this stage of the litigation. *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a

2

customers nationwide and internationally.  (Compl. ¶ 18; MM Decl. ¶ 4).  The company has a single warehouse at the Lincoln Avenue location, where it keeps all of its moving trucks.  (MM Decl. ¶ 9).  All employees report to that location in the morning and return the trucks to that same location at the end of the workday.  (*Id.*).

Defendants employ drivers and driver-helpers.  As Plaintiffs explain, "[t]here are no other positions at Movage."  (MM Decl. ¶ 12; JW Decl. ¶ 13). The drivers' duties involve "not only driving the truck[s] but also doing the work movers do[.]"  (*Id.*).  That includes "packing and securing furniture and other household items, carrying them to the truck and securing them in the truck, then driving to the customer's new house and putting the items there and unpacking them."  (*Id.*).  Driver-helpers' duties are nearly identical to those of the drivers, "except that [driver-helpers] do not drive the truck."  (*Id.*).  In other words, "the only distinction between the two is who drives the truck that particular day."  (*Id.*).

Typically, "[d]rivers would be paired with driver-helpers."  (MM Decl. ¶ 8; JW Decl. ¶ 9).  They were given instructions each morning as to their daily duties and the order in which they were to perform the various moves for the day.  (*Id.*).  They "would then be assigned to a truck appropriate for the job or jobs [for] that day and [would] load them with materials necessary for the

---

motion for conditional certification).  And the Court "will grant the plaintiff the benefit of the doubt given the posture of this motion."  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013) (internal quotation marks, brackets, and citation omitted).

move, such as cardboard boxes of various sizes, tarps, blankets, packaging tape[,] and other materials and tools [ ] needed [for] the job[.]" (*Id.*).

Drivers and driver-helpers typically start their workday at 7:30 a.m. (MM Decl. ¶ 8; JW Decl. ¶ 9). They usually depart the warehouse for the first job of the day at 8:00 a.m. (MM Decl. ¶ 10; JW Decl. ¶ 11). Throughout Plaintiffs' employment with Movage, the company "would not pay [its drivers and driver-helpers] for the time spent at the warehouse after [their] arrival [in the morning], or for the time [ ] spent travelling from the warehouse to [their] destination." (MM Decl. ¶ 11; JW Decl. ¶ 12). Similarly, Movage "would not pay [them] for the time it took [ ] to travel [from one customer location] to the next … or for the time it took [ ] to travel back to the warehouse [at the end of the day]." (*Id.*).

Drivers' and driver-helpers' hours fluctuated, in part based on the season. During the winter, when business was typically slower, "it was common for a driver or driver[-]helper to work from 7:30 a.m. until 5:00 p.m. for between 28 and 38 hours per week. Usually Movage would only pay [them] for about 19 hours of work [during] those weeks." (MM Decl. ¶ 14; JW Decl. ¶ 15). During the spring and fall seasons, Movage employees "would typically work from 7:30 a.m. until 6:00 p.m. for about 52.5 hours per work[,] [though they were] only [ ] paid for approximately 32 hours of work." (MM Decl. ¶ 15; JW Decl. ¶ 16). During the summer — Movage's busiest time, when each team typically handled two or three moves per day (MM Decl. ¶ 13; JW Decl. ¶ 14) — they "would typically work from 7:30 a.m. until 1:00 a.m. for about 94.5 hours

per week[,] [though] Movage would usually only pay [them] for about 48.5 hours[.]" (MM Decl. ¶ 16; JW Decl. ¶ 17).

Plaintiff Mitchell Martinez worked for Movage as a driver and driver-helper from March 2014 until March 2015. (MM Decl. ¶ 3). Plaintiff Jevon Williams was similarly employed between February 2014 and May 2015. (JW Decl. ¶ 3). Plaintiff Dimitrije Zivkovic worked for Movage as a driver-helper from June 2014 until July 2014. (Compl. ¶¶ 24-30). And Plaintiff Derrick Adams worked for Movage as a driver and driver-helper from November 2014 until June 2015. (*Id.* at ¶¶ 31-33).

Plaintiffs Williams and Martinez allege that "[t]hroughout [their] employment …, Movage would fail to pay [them] for every hour that [they] worked (which caused [their] hourly pay rate to fall below the minimum wage)[.]" (MM Decl. ¶ 6; JW Decl. ¶ 6). Movage also "ma[d]e unauthorized and illegal deductions from [their] wages for, among other things, tolls and traffic tickets, and unilaterally alter[ed] the manner and method of calculating [their] compensation without giving [them] notice by switching [them] from a commission based pay rate to an hourly rate of pay." (*Id.*). On one occasion, Martinez and Williams were sent to Boston to assist a customer. Upon their return, "Movage deducted [ ] the costs of the tolls from [Martinez's] pay [and] docked [both Martinez and Williams] three days' pay." (MM Decl. ¶ 7; JW Decl. ¶ 8).

Martinez and Williams allege that they were paid below the minimum wage. Martinez claims that, "[d]uring the summer season[,] [he] worked over

5

90 hours per week[,] [but his] gross pay was between $400.00 and $500.00."
(MM Reply Decl. ¶ 5).  During the winter season, he "worked over 30 hours per
week[,] [but his] gross pay was only $200.00."  (*Id.* at ¶ 6).  Williams, for his
part, identified numerous pay periods when his effective pay rate fell below the
minimum wage, including the periods ending April 11, 2014; April 25, 2014;
July 18, 2014; August 15, 2014; August 29, 2014; and May 22, 2015.  (JW
Reply Decl. ¶¶ 6-7, 13-16).  Williams further states that these "were not the
only pay periods where [his] effective rate of pay was below the minimum
wage."  (*Id.* at ¶ 17).

Martinez and Williams claim that "[d]uring [their] employment at Movage
[they] worked with dozens of other drivers and driver[-]helpers[.]"  (MM Decl.
¶ 17; JW Decl. ¶ 18).  Based on conversations with, or direct observations of,
their colleagues, they assert that "Movage was also failing to pay [their
colleagues] appropriately by failing to pay them for every hour that they
worked, changing the manner and method of calculating their pay, and making
unauthorized deductions from their wages."  (*Id.*).  Martinez names 42 fellow
drivers and driver-helpers — some by first name only — who, he claims, were
underpaid, some by as many as 11 hours per pay period.  (MM Decl. ¶ 18; MM
Reply Decl. ¶ 9).[3]  Martinez asserts, upon information and belief, that his

---

[3]     Martinez names the following individuals with whom he worked at Movage: Jevon
        Williams, Christian Cruz, Joseph Slater, Kenny Matisa, Javier, George Grady, Theodore
        Duncan, Slobo, Juan Marquez, Steven Marquez, Shawn Gordon, Jose, Greg, Thomas
        Brown, Robert, Charlie Corchado, Stanley, Mike, Sam, Matthieu, Shawn Caldwell, Ivan,
        Jimmy, Kiko, Chris, Jason, Luis Jiminez, Joey, Jose P., Marmadu, Nikola, Rado,
        Vladimir, Dodi, Michel, Luis Soto, Henry Jaramillo, Akeem Jernell, Gregory, Louis J.,
        Derrick Adams, and Dimitrije Zivkovic.  (MM Decl. ¶ 18).  Williams, for his part, lists 42
        individuals with whom he worked; his list is substantially identical to Martinez's list,

colleagues' "gross income was less than $700.00 per week during the busy summer period" and that "their rate of pay also fell below the minimum wage." (MM Reply Decl. ¶ 11).  Williams similarly states that, "[b]ased on the conversations with [his] co-workers, [he] believe[s] that their pay rate fell below the minimum wage."  (JW Reply Decl. ¶ 12).

Martinez and Williams assert that they had so many conversations with their former co-workers about Movage's failure to properly compensate them that "it is difficult to provide any specifics in terms of the dates or places of their occurrences."  (MM Decl. ¶ 19; JW Decl. ¶ 20).  Martinez claims that those "conversations happened every pay day or within a day or two of pay day" (MM Decl. ¶ 20); Williams states the conversations "happened at least once every two weeks on pay day but, on occasion, they also occurred when guys decided to open up and talk to see if anyone else was having the same experiences" (JW Decl. ¶ 21).  The conversations took place "at the Movage warehouse, job sites, and in the company trucks as [they] were driving to and from job sites."  (MM Decl. ¶ 22; JW Decl. ¶ 23).  Williams and Martinez specifically recall having had these conversations with each other, as well as with the following employees:  Christian Cruz, Luis Jimenez, George Grady, Javier, Luis Soto, Giorgi, Slobo, Charlie Corchado, Derrick Adams, and Dimitrije Zivkovic.  (MM Decl. ¶¶ 24-29; JW Decl. ¶ 24).  Each spoke of missing

---

with the exception that Williams names Martinez instead of himself.  (*See* JW Decl. ¶ 19).

hours, variable rates of pay, or improper deductions from their paychecks. (MM Decl. ¶ 30; JW Decl. ¶ 24).

## B.    Procedural Background

On April 12, 2017, Plaintiffs filed a complaint advancing six collective action claims, including: (i) breach of contract, asserting that Defendants failed to pay Plaintiffs the wages to which they were entitled under their employment agreements (Compl. ¶¶ 98-103); (ii) quantum meruit, claiming that "Plaintiffs and others similarly situated are entitled to payment equal to the fair value of the uncompensated work they [performed]" (*id.* at ¶ 108; *see id.* at ¶¶ 104-08); (iii) violations of the NYLL minimum wage provisions, alleging that "the total weekly wage [Plaintiffs and others similarly situated] were paid, divided by the total number of hours they worked per week, was less than the minimum wage mandated under the NYLL" (*id.* at ¶ 111; *see id.* at ¶¶ 109-14); (iv) unpaid promised wages, in violation of NYLL § 190(1) (*id.* at ¶¶ 115-18); (v) failure to provide adequate wage notices, in violation of NYLL § 195.1 (*id.* at ¶¶ 119-23); and (vi) violations of the FLSA minimum wage, alleging that, "[f]or Plaintiffs and others similarly situated, the total weekly wage they were paid, divided by the total number of hours they worked per week, was less than the minimum wage mandated under the FLSA" (*id.* at ¶ 126; *see id.* at ¶¶ 124-27).

The Court held an initial pretrial conference on July 14, 2017. (*See* Dkt. #36). During that conference, Plaintiffs indicated that they intended to file a motion for conditional collective certification under § 216(b) of the FLSA. (*See id.* at 2:14-18). On July 18, 2017, Defendants filed a letter with the parties'

proposed briefing schedule for Plaintiffs' contemplated motion.  (Dkt. #22).  The Court approved the proposed schedule (Dkt. #23), according to which Plaintiffs were to file their § 216(b) motion by August 25, 2017; Defendants were to file their opposition by September 22, 2017; and Plaintiffs were to file their reply by October 6, 2017.  The parties timely filed their submissions.  (*See* Dkt. #24, 26-32, 35).

## DISCUSSION

**A.    Applicable Law**

**1.    The FLSA Generally**

The FLSA permits aggrieved employees to bring collective actions against their employers for unlawful employment practices.  The statute authorizes suits "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  28 U.S.C. § 216(b).  Unlike class actions brought under Rule 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness. *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Fed. R. Civ. P. 23(a).  "Also unlike Rule 23, only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'"  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)).  District courts may, in their discretion, "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented

plaintiffs." *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted) (citing *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).

### 2.   Collective Certification Under § 216(b) of the FLSA

The Second Circuit has endorsed a two-step method to certify FLSA collective actions. *Myers*, 624 F.3d at 555.  At the first step, courts consider whether "to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* (internal quotation marks and citations omitted).  At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*  This second step "typically occurs after the completion of discovery[.]" *Bifulco* v. *Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  At the latter stage, the court may "decertify the class or divide it into subclasses, if appropriate." *McGlone* v. *Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Plaintiffs bear a low burden at the first step:  They need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015).  Upon such a showing, plaintiffs may send notice to other potential plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."

*Myers*, 624 F.3d at 555.  "Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Mentor* v. *Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)).

At the first stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)).  Courts in this District have therefore held that a FLSA collective action may be conditionally certified based upon even a single plaintiff's affidavit.  *Escobar* v. *Motorino E. Village Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

**B.   Analysis**

**1.   Conditional Certification Is Warranted**

**a.   Plaintiffs Advance a Colorable Claim for Relief**

Defendants base their opposition to conditional certification on a single theory:  In their estimation, "Plaintiffs have failed to meet the low burden required of them [because] they have failed to allege how much anyone was ever actually paid, thus leaving this Court to guess whether Plaintiffs' effective wages ever fell below the federally-mandated minimum wage[.]"  (Def. Opp. 2). Defendants further assert that Plaintiffs merely allege that Defendants failed to pay them for all hours worked.  (*Id.* at 2-3).  This, Defendants note, "is not violative of the FLSA if the minimum wage was met by the overall pay."  (*Id.*).

11

Defendants begin with a valid premise:  Plaintiffs must make a colorable claim that a FLSA violation occurred in order to succeed on a motion for conditional certification.  *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) (explaining that "the Court must at this stage evaluate the sufficiency of plaintiffs' pleadings").  That, in turn, requires Plaintiffs to "state more than vague legal conclusions."  *Id.* at 555.  Yet Defendants' conclusion — that Plaintiffs have failed to state a claim for failure to pay the minimum wage — misses the mark.  Contrary to Defendants' argument, Plaintiffs' factual allegations easily meet the low burden applicable here.

The Complaint advances specific allegations that establish a colorable FLSA claim.  It states that "Defendants refused to pay Plaintiffs and others similarly situated for all of the hours they worked at either their regular wage or promised wage, resulting in an average hourly rate … that was below the minimum wage." (Compl. ¶ 3).  It also contains quantitative information as to the number of hours worked, the number of hours paid, and the hourly rates. For example, Plaintiffs allege that they were paid $9-$14 per hour.  (*Id.* at ¶¶ 19-21, 24-25, 31).  They further allege that, during the winter season, they worked between 28.5 and 38 hours per week but were only paid for approximately 19 hours per week (*id.* at ¶¶ 36-37); during the spring and fall seasons, they worked at least 52.5 hours per week but were only paid for approximately 32.5 of those hours (*id.* at ¶¶ 38-39); and during the summer season, they worked for at least 94.5 hours per week but were only paid for

approximately 48.5 of those hours (*id.* at ¶¶ 40-41).  Simple arithmetic shows that Plaintiffs' average hourly wages — for at least parts of the year — fell below the federal minimum wage.[4]  Plaintiffs even advance a theory accounting for the gap between the hours worked and the hours paid:  They allege, *inter alia*, that Defendants refused to pay them for time spent driving to and from client locations.  (*Id.* at ¶¶ 44-47).

Plaintiffs' declarations provide additional details that belie Defendants' claim that Plaintiffs have not specified their rates of pay.  For example, Williams states that his average hourly rate for the two-week period ending April 11, 2014, was $6.70; for the period ending April 25, 2014, $5.47; for the period ending July 18, 2014, $6.99; for the period ending August 15, 2014, $5.94; for the period ending August 29, 2014, $4.87; and for the period ending May 22, 2015, $5.32.  (JW Reply Decl. ¶¶ 6-7, 13-16).[5]  Martinez asserts that, though he worked more than 90 hours per week during the summer season, his gross pay was between $400 and $500, equivalent to an hourly rate of no more than $5.56; in the winter, he worked over 30 hours per week, with a

---

[4]     Even at the highest hourly rate ($14), the average hourly rate for summer months — when Defendants allegedly paid Plaintiffs for only 48.5 out of 94.5 hours worked — was $7.19.

[5]     The Court notes that, although Plaintiffs did not allege these facts in their opening declarations and only did so in their reply declarations, the Court may consider them in the context of a motion for conditional certification.  *See, e.g.*, *Megason* v. *Starjem Restaurant Corp.*, No. 12 Civ. 1299 (NRB), 2014 WL 113711, at *1 n.1 (S.D.N.Y. Jan. 13, 2014) (relying on allegations advanced in a reply declaration to adjudicate a motion for conditional certification); *Elmajdoub* v. *MDO Dev. Corp.*, No. 12 Civ. 5239 (NRB), 2013 WL 6620685, at *1 n.1 (S.D.N.Y. Dec. 11, 2013) (same); *Vasquez* v. *Vitamin Shoppe Industries Inc.*, No. 10 Civ. 8820 (LTS) (THK), 2011 WL 2693712, at *2-5 (S.D.N.Y. July 11, 2011) (same); *Kalloo* v. *Unlimited Mechanical Co. of N.Y., Inc.*, 908 F. Supp. 2d 344, 347 (E.D.N.Y. 2012) (same).

13

gross pay of just $200, equivalent to an average hourly rate of no more than $6.67.  (MM Reply Decl. ¶¶ 5-6).  He further claims that he is "certain of the specific hours [he] worked during [his] employment with Movage" and "believe[s] that [his] pay rate fell below the minimum wage."  (*Id.* at ¶¶ 4, 7).

These allegations show that Plaintiffs do not — as Defendants claim — merely allege that Defendants failed to pay them for all hours worked. Rather, the factual allegations support a colorable claim for violations of the FLSA's minimum wage requirements.  Plaintiffs have explicitly alleged — in their Complaint and their declarations — that their average hourly wages fell below the FLSA minimum wage.  Accordingly, the Court rejects Defendants' argument that Plaintiffs have failed to advance a colorable claim.

### b.   Plaintiffs Have Adequately Alleged That They Are "Similarly Situated" to the Proposed Opt-In Plaintiffs

The proposed opt-in plaintiffs are similarly situated to the Plaintiffs, a point that Defendants do not even contest.  Each of the Plaintiffs worked as a driver, driver-helper, or both.[6]  The drivers' and driver-helpers' responsibilities were substantially similar, and included "packing and securing furniture and other household items, carrying them to the truck and securing them in the truck, then driving to the customer's new house and putting the items there and unpacking them."  (MM Decl. ¶ 12; JW Decl. ¶ 13).  "[T]he only distinction between the two is who drives the truck that particular day."  (*Id.*).  And the

---

[6]     Jevon Williams and Mitchell Martinez worked as drivers and driver-helpers (JW Decl. ¶ 3; MM Decl. ¶ 3), Dimitrije Zivkovic worked as a driver-helper (Compl. ¶ 24), and Derrick Adams worked as a driver (*id.* at ¶ 31).

Plaintiffs all worked at the same location: Movage's lone warehouse in the Bronx.

The proposed collective members, like Plaintiffs, were drivers and driver-helpers.  (*See* MM Decl. ¶ 12; JW Decl. ¶ 13).  And they, like Plaintiffs, "did not receive the compensation required by the FLSA in respect to their work for Defendants." (Compl. ¶ 80).  In the Complaint, Plaintiffs allege that the group of potential opt-in plaintiffs "consists of not [fewer] than eleven persons." (*Id.* at ¶ 81).  In connection with the pending motion, Plaintiffs submitted declarations that name 39 individuals who are similarly situated.[7]  Plaintiffs allege that they have had numerous conversations with potential opt-in plaintiffs (MM Decl. ¶¶ 19-29; JW Decl. ¶¶ 18-25); "[e]ach and every one of them has spoken about how they were missing hours from their pay or how the rate of pay was changed or money was deducted from their pay" (MM Decl. ¶ 30).  These allegations suffice to show that the potential opt-in plaintiffs are "similarly situated" to the Plaintiffs.

For these reasons, the Court finds that Plaintiffs have cleared the low hurdle to conditional certification.  The Court next turns to the proposed judicial notice and consent form and the production of Movage employees' contact information.

---

[7]     Martinez and Williams claim that the following drivers and driver-helpers were similarly situated to the named Plaintiffs in this case: Christian Cruz, Joseph Slater, Kenny Matisa, Javier, George Grady, Theodore Duncan, Slobo, Juan Marquez, Steven Marquez, Shawn Gordon, Jose, Greg, Thomas Brown, Robert, Charlie Corchado, Stanley, Mike, Sam, Matthieu, Shawn Caldwell, Ivan, Jimmy, Kiko, Chris, Jason, Luis Jiminez, Joey, Jose P., Marmadu, Nikola, Rado, Vladimir, Dodi, Michel, Luis Soto, Henry Jaramillo, Akeem Jernell, Gregory, and Louis J.  (MM Decl. ¶ 18; JW Decl. ¶ 19).

### 2. The Court Accepts Certain of Defendants' Objections to Plaintiffs' Proposed Judicial Notice and Consent Form

Having determined that conditional certification of the proposed collective action is warranted, the Court turns to questions regarding the form of notice. The FLSA does not specify the contents of the notice of pending litigation to be provided to potential opt-in plaintiffs. Instead, it vests the Court with broad discretion to fashion said notice. *See Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *Gjurovich*, 282 F. Supp. 2d at 106. In assessing the adequacy of proposed notice, courts consider whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170.

Defendants advance various objections to the Plaintiffs' proposed notice. *First,* they object to the length of the notice period: Plaintiffs request a six-year period; Defendants propose a three-year period. (Def. Opp. 5). *Second*, Defendants argue that public posting of the proposed notice "is inappropriate and unnecessary" and that "[m]ailing is sufficient, particularly where Plaintiffs have also requested employees' phone numbers and email addresses." (*Id.* at 6). *Third*, Defendants assert that the opt-in period should be 60 days, not 90 days as requested by Plaintiffs. (*Id.* at 7). *Fourth*, Defendants object to Plaintiffs' request that a reminder notice be sent. (*Id.* at 7-8). *Finally*, Defendants object to any reference in the proposed notice to "double liquidated damages." (*Id.* at 8).

The Court addresses each in turn.

16

### a.     A Three-Year Notice Period Is Warranted

The parties' first dispute concerns the scope of the notice period.
Plaintiffs argue that because they assert NYLL claims alongside the FLSA
claim, the notice period should be six years.  (*See* Pl. Br. 18).  Defendants, by
contrast, assert that because Plaintiffs have only moved for conditional
certification under the FLSA, and have not moved for class certification under
Rule 23, the statute of limitations for the FLSA claim (i.e., three years, in the
case of willful violations) should determine the notice period.  (Def. Opp. 5-6).

Although some courts in this District have approved a six-year notice
period where NYLL claims are brought alongside FLSA claims, *see, e.g.*, *Realite*
v. *Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 n.4 (S.D.N.Y. 1998);
*Harrington* v. *Educ. Mgmt. Corp.*, No. 02 Civ. 0787 (HB), 2002 WL 1343753, at
*2 (S.D.N.Y. June 19, 2012), the growing trend has been to limit the notice
period to three years where plaintiffs have not moved to certify a Rule 23 class
as to the NYLL claims, *see, e.g.*, *Ramos* v. *PJJK Restaurant Corp.*, No. 15 Civ.
5672 (PKC), 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10, 2016); *Trinidad*, 962 F.
Supp. 2d at 564 (citing *Lujan* v. *Cabana Mgmt., Inc.*, No. 10 Civ. 0755 (ILG),
2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011)); *Hamadou* v. *Hess Corp.*, 915
F. Supp. 2d 651, 668 (S.D.N.Y. 2013).  The rationale for limiting the notice
period to three years — and tying the notice period to the applicable statute of
limitations for FLSA claims — is clear, and, in this Court's view, compelling.  It
avoids the confusion that would result from sending opt-in notices to
employees who are ineligible for the FLSA opt-in collective action, *Hamadou*,

17

915 F. Supp. 2d at 668, and it promotes efficiency by, *inter alia*, preventing needless discovery into the names and addresses of former employees whose claims would have accrued outside the three-year limitations period.

Here, the Court finds that a three-year period is appropriate, given that Plaintiffs have not sought class certification for their NYLL claims. The only collective action presently contemplated is the one conditionally certified under § 216(b). The Court has no reason to believe that discovery into former employees who worked for Defendants outside the three-year notice period would "serve the efficiency goal articulated in *Hoffmann*." *Trinidad*, 962 F. Supp. 2d at 564. Accordingly, the Court declines to order a six-year notice period and instead limits the notice period to three years.

The Court approves Plaintiffs' request to have Defendants produce, in paper and electronic format, the names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members. (*See* Pl. Br. 16-17). "Courts in this district and throughout the Second Circuit have repeatedly emphasized the importance of discovery of the email addresses and telephone numbers of putative collective members." *Rojas* v. *Kalesmeno Corp.*, No. 17 Civ. 0164 (JCF), 2017 WL 3085340, at *8 (S.D.N.Y. July 19, 2017). "It is standard to provide the names, last known addresses, and telephone numbers for the potential opt-in plaintiffs … [and] in this day of electronic communication, courts have authorized defendants to provide email address[es] as well." *Hernandez* v. *Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF), 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012) (citations omitted).

18

Here, Defendants have not alleged that it would be burdensome to identify potential opt-in plaintiffs or to produce the relevant data for potential plaintiffs employed within the three-year notice period.  For this reason, the Court grants Plaintiffs' request for production of a complete set of contact information for potential opt-in plaintiffs.

###    b.    Posting the Proposed Notice Is Warranted

Defendants next object to Plaintiffs' request that the Court require Defendants to post the notice "on an employee bulletin board" or "in other employee common spaces at [Movage's] warehouse."  (Pl. Br. 17).  In Defendants' view, "[m]ailing is sufficient, particularly where Plaintiffs have also requested employees' phone numbers and email addresses."  (Def. Opp. 6).

Courts in this Circuit "regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms." *Castillo* v. *Perfume Worldwide Inc.*, No. 17 Civ. 2972 (JS) (AKT), 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018); *see also Trinidad*, 962 F. Supp. 2d at 564 (collecting cases).  And they frequently do so even where they have also directed defendants to produce contact information for potential opt-in plaintiffs.  *See Castillo*, 2018 WL 1581975, at *16-17; *Barbato* v. *Knightsbridge Properties*, No. 14 Civ. 7043 (JS) (SIL), 2015 WL 5884134, at *7 (E.D.N.Y. Oct. 8, 2015); *Hernandez* v. *Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *5-6 (S.D.N.Y. June 25, 2013); *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011).

This Court sees no reason to deviate from the common practice of courts in this Circuit in requiring notice to be posted in one or more common areas at the workplace.  The Court also finds that the characteristics of employment in this case make public posting particularly useful.  Here, potential opt-in plaintiffs "spend many hours on the road travelling" and "cannot review mail that is delivered to their place[s] of abode."  (Pl. Reply 8-9).  Because they may not be home for days at a time, "these employees may inadvertently miss such important communication in a stack of accumulated mail."  (*Id.* at 9).  The fact that they "always return to … the company shop, where they have to drop off the vehicles and documents" makes posting in the warehouse especially helpful.  (*Id.*).  Given that Defendants operate a single warehouse, the Court finds it implausible that posting would entail a significant burden.  Accordingly, the Court grants Plaintiffs' request to have the notice posted on an employee bulletin board or in one or more other common areas at Movage's warehouse.

### c.     The Opt-In Period Will Be Limited to 60 Days

Plaintiffs propose allowing potential plaintiffs to return opt-in notices within 90 days.  (Pl. Br. 18).  Defendants object, requesting instead that the Court limit the opt-in period to 60 days.  (Def. Opp. 7).  Though this Court and others have granted opt-in periods of up to 90 days, they have generally done so only "where the period is agreed upon between the parties or special circumstances require an extended opt-in period."  *Whitehorn*, 767 F. Supp. 2d at 452 (citations omitted); *see also Fa Ting Wang* v. *Empire State Auto Corp.*,

No. 14 Civ. 1491 (WFK) (VMS), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases).

Here, there are no exceptional circumstances that might justify such an extended period. Plaintiffs argue that a 90-day opt-in period is warranted because the potential opt-in plaintiffs are at times required to take long-distance trips that keep them away from home for days at a time. (Pl. Reply 9; *see* JW Decl. ¶ 7). The Court credits Plaintiffs' assertion that Movage requires its drivers and driver-helpers to travel great distances. (Compl. ¶ 43). Yet the Court remains unpersuaded that a 60-day period is insufficient. Plaintiff Williams's declaration suggests that a cross-country trip takes approximately eight days. (JW Decl. ¶ 7). That leaves 52 days for the cross-country driver or driver-helper to receive and respond to the notice, which this Court considers to be more than sufficient. Although this Court has previously endorsed a 90-day opt-in period, it has only done so once, and only where the issue was uncontested. *See Lopez* v. *JVA Industries, Inc.*, No. 14 Civ. 9988 (KPF), 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015). That, of course, does not apply here. For these reasons, the Court will not authorize a 90-day opt-in period; instead, potential opt-in plaintiffs are to return their consent forms within 60 days of their issuance.

### d.    A Reminder Notice Is Warranted

The Court next addresses Plaintiffs' request to send a reminder notice to prospective opt-in plaintiffs 45 days after the initial notice is distributed. Plaintiffs argue that a reminder is warranted because it will help Plaintiffs

"inform as many potential plaintiffs as possible of the collective action and their right to opt-in." (Pl. Br. 18).  They note that "courts within the Southern District of New York routinely permit a reminder letter to be distributed[.]" (*Id.*).  Defendants, in opposition, assert that Plaintiffs "have provided no reason demonstrating the necessity of [sending reminder notices]." (Def. Opp. 7). Relying on non-binding precedent, Defendants claim that "reminders run the risk of improperly suggesting that a recipient is being encouraged to join the lawsuit, rather than merely being advised of their right to do so." (*Id.* at 8 (citing *Witteman* v. *Wisconsin Bell, Inc.*, No. 09 Civ. 440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010); *Knispel* v. *Chrysler Grp. LLC*, No. 11-118886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012))).

     This Court agrees with Plaintiffs that a reminder notice is appropriate. The Court has twice previously addressed the issue; both times, it authorized such notice.  *See Lopez*, 2015 WL 5052575, at *4 (collecting cases); *Racey* v. *Jay-Jay Cabaret, Inc.*, No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (same).  It has also endorsed the reasoning articulated by other courts in this District in support of reminder notices, and has quoted *Chhab* v. *Darden Restaurants, Inc.*, stating that reminder notices are appropriate "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in[.]"  No 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013).

This Court most recently addressed the issue in *Racey*. 2016 WL 3020933, at *11. Since then, numerous other courts in this Circuit have opined on the matter; they have consistently authorized reminder notices. *See, e.g.*, *Lopez* v. *Paralia Corp.*, No. 16 Civ. 6973 (SLT) (PK), 2018 WL 582466, at *3 (E.D.N.Y. Jan. 26, 2018); *Knox* v. *John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017); *Cabrera* v. *Stephens*, No. 16 Civ. 3234 (ADS) (SIL), 2017 WL 4326511, at *11-12 (E.D.N.Y. Sept. 28, 2017); *Sanchez* v. *Jyp Foods Inc.*, No. 16 Civ. 4472 (JMF), 2017 WL 95338, at *2 (S.D.N.Y. Jan. 10, 2017); *Sanchez* v. *Salsa Con Fuego, Inc.*, No. 16 Civ. 473 (RJS) (BCM), 2016 WL 4533574, at *8 (S.D.N.Y. Aug. 24, 2016). Here, the Court finds no reason to depart from its own practice — and that of so many of its sister courts — in permitting Plaintiffs to send reminder notices.

Accordingly, Plaintiffs are authorized to distribute a reminder notice 45 days after the start of the 60-day opt-in period. Because Plaintiffs have yet to provide the Court with a copy of the proposed reminder notice, the Court's authorization is conditional on the filing of a proposed reminder notice, and the Court's approval thereof.

### e.   Plaintiffs Will Remove the Reference to "Double Liquidated Damages"

Defendants object to the reference in the proposed notice to "double liquidated damages," arguing that such damages "are not available, as a practical matter, having been recently disallowed by the Second Circuit." (Def. Opp. 8 (citing *Muhammed Chowdhury* v. *Hamza Express Food Corp.*, 666 F. App'x 59 (2d Cir. 2016) (summary order)). Plaintiffs fail to address this point in

their reply brief.  The Court notes that, since Defendants filed their opposition brief, the Second Circuit "conclude[d] that, because New York Labor Law does not call for awards of NYLL liquidated damages on top of liquidated damages under the FLSA, district courts may not award cumulative liquidated damages for the same course of conduct under both statutes." *Rana* v. *Islam*, No. 16-3966-cv, 2018 WL 1659667, at *1 (2d Cir. Apr. 6, 2018) (per curiam).  Given the Second Circuit's recent decision, the Court agrees with Defendants that any reference to "double liquidated damages" in the proposed notice is misleading and must be removed.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for conditional certification and court-authorized notice is GRANTED, subject to the aforementioned modifications to the proposed notice period and opt-in period.

Plaintiffs are hereby ORDERED to submit a revised version of the Proposed Notice, Consent to Join form, and a Reminder Notice, reflecting the Court's modifications and any other appropriate modifications, for final review within seven days of the date of this Order.

To the extent not previously done, Defendants are ORDERED to provide Plaintiffs with the names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members within 30 days of this Order.

Plaintiffs are further ORDERED to mail the final Notice and Consent to Join no later than 30 days after Defendants produce the names and relevant information for potential collective members.

Plaintiffs are AUTHORIZED to issue a reminder notice, subject to the Court's review and approval of same, 15 days before the end of the 60-day opt-in period.

The Clerk of Court is directed to terminate the motion at Docket Entry 26.

SO ORDERED.

Dated:      April 24, 2018
            New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge