**ROBERT WISNIEWSKI P.C.**
ATTORNEYS-AT-LAW

40 WALL STREET, SUITE 2833 • NEW YORK, NY 10005
TEL: (212) 267-2101 • FAX: (646) 512-5604
WEBSITE: www.rwapc.com

December 2, 2019

The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007
    *Via ECF*

        Re:    **Williams, et al., v. Movage, et al.**
                    **Docket No.: 17-cv-02628 (KPF)(DF)**

Dear Judge Failla:

I am co-counsel along with Albert Breud, II, Esq., for all Plaintiffs ("Plaintiffs") in the above-referenced action. This motion is respectfully submitted pursuant to Rules 2B and C of Your Honor's Individual Rules to present to the Court the terms of the proposed judgment ("Proposed Judgment") accepted by Plaintiffs in response to Defendants' Rule 68 Offer of Judgment and which also incorporates attorneys' fees and costs which counsel for the parties negotiated separately and only after all Plaintiffs had accepted the offer of judgment.

Attached herewith are the following Exhibits:

    **Ex. 1**    Proposed Judgment (also filed separately as per the SDNY Rules as Doc. No. 93);
    **Ex. 2**    Co-counsel Albert Breud, II's invoice for attorney fees;
    **Ex. 3**    My firm's invoice for attorney fees;
    **Ex. 4**    My firm's invoice for costs and disbursements;
    **Ex. 5**    Backup documentation for costs.

Briefly, the Proposed Judgment has two components: a total amount of $40,000 for Plaintiffs and a total amount of $60,000 in attorney fees and costs for Plaintiffs' co-counsel. Both of these amounts are further broken down *pro rata* for Plaintiffs – based on their *pro rata* share in the claimed damages and for Plaintiffs' counsel – based on their invoices attached herewith. Because this is a wage and hour action, Plaintiffs further broke down their respective shares 50/50 as wages and liquidated damages as per the IRS Circular E (for employers). Plaintiffs' counsel's negotiated fees, while high, represent less than 50% of the total time spent by counsel and reflect the time required to counter the unnecessarily aggressive, no-holds barred defense deployed by Defendants.[1] Plaintiffs' counsel are also proud that by accepting substantially

---

[1] Suffice it to say that as late as 4:00PM today, which is over two months after Plaintiffs had accepted Defendants' offer of judgment and one week after their counsel had accepted Defendants' offer to pay substantially reduced fees, Defense counsel, Mr. Lurie, attempted to modify the Proposed Judgment by requesting that we insert a proviso that the Proposed Judgment be paid either "some time next summer" or in "24 monthly installments". My co-counsel, Albert Breud, II, who negotiated with Mr. Lurie, advises that he rejected such efforts at modification

discounted fees they preserved scarce judicial resources and avoided a prolonged fee motion battle.

We respectfully request that, if Your Honor finds the submission in any way deficient, Plaintiffs be given an opportunity to supplement it.

### I. Statement of the Case

Plaintiffs Jevon Williams, Mitchell Martinez, Dimitrije Zivkovic and Derrick Adams commenced the instant action alleging, *inter alia*, violations of the minimum wage provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Movage, Inc.("Movage"), Bajo Vujovic ("Vujovic") and Christian Tatar[2] ("Defendants"). Movage is a moving and storage business which, at all times relevant to the Complaint, was located in the Bronx, New York. Plaintiffs were all employed Movage as drivers and driver helpers.

Generally, Plaintiffs alleged that they were not compensated by Defendants for all of the hours that they worked and that the Defendants' failure to pay them for all of the hours that they worked reduced their effective rate of pay below the minimum wage promulgated under the FLSA. Specifically, Plaintiffs alleged that they were not compensated: (1) from the time they arrived at the Movage warehouse each morning until they arrived at their first job site each day; (2) for the time they spent travelling between jobs; (3) for the time they spent travelling back to the warehouse from their last job of the day; and, (4) for time they spent working at the warehouse at the end of the day until they left. Defendants deny Plaintiffs' allegations.

Defendants denied all of the Plaintiffs' allegations. In addition to documentary evidence in their favor, Defendants have current employees who are prepared to testify that Plaintiffs were paid for every hour that they worked. These defenses articulated by Defendants would ultimately raise issues of fact that would prolong litigation, Plaintiffs' counsel are satisfied that the Proposed Judgment with respect to Plaintiffs is fair, reasonable serves the best interests of Plaintiffs.

### II. Procedural History of the Case

Plaintiffs filed the Complaint on April 12, 2017. Shortly thereafter the Defendants filed their answer. An initial scheduling conference was held with the Court on July 14, 2017 at which discussion ensued about Plaintiffs' intention to file a motion seeking, *inter alia*, conditional certification pursuant to Section 216(b) of the FLSA.

During that conference Your Honor discussed with Defendants' then attorney the relatively minimal evidentiary showing Plaintiffs would have to make in order to be successful on their

---

outright. However, neither Mr. Breud nor I wish to put Defendants into insolvency and will attempt to work with Defendants to make sure that, as a result of the Proposed Judgment, Defendants not close the business and put people out of work.

[2]   Identified in the caption of the complaint as Christian "Doe".

anticipated motion and asked whether Defendants would prefer to resolve the anticipated motion via stipulation or motion. At that time, Defendants "chose" to force Plaintiffs proceed via motion. Because Defendants' choice, hotly contested, costly and time-consuming motion practice occurred until Plaintiffs' motion was granted in significant part. Even after Defendants had been ordered to produce a complete list of current and former employees and their last known addresses in hard copy and electronic form, Defendants produced only a hard copy list that was missing a considerable number of employees or lacked the addresses of those whose names were produced.

Subsequent to Plaintiffs' distribution of a Notice of Pendency, six (6) additional Plaintiffs filed consents to sue and "opted in" to the case as party plaintiffs under the FLSA. These opt-in Plaintiffs are: Thomas Brown, Daniel Almiral, Franklin Vargas, Gregory Bodie, Patrick Troy Raymond, and George Grady[3].

Shortly into the discovery phase, it became clear that Defendants' attorneys were not engaging in good faith document production. Having been unable to resolve the numerous discovery issues despite several attempts, we prepared and were ready to file applications to the Court, when Defendants engaged new counsel, LurieStrupinsky, and the parties requested that discovery be stayed so that they could attempt settlement at a conference. The matter was referred to Magistrate Judge Freeman for settlement.

In preparation of a teleconference with Magistrate Judge Freeman, it emerged Defendants' initial counsel had advised the new counsel that several hundred pages of documents that were critical to Plaintiffs case had been produced when, in fact, they were not. Piecemeal document production became thematic as at various points LurieStrupinsky produced documents only after we advised them that their predecessors had not even though, apparently, LurieStrupinsky advised that they had been told by prior counsel that such documents had been produced.[4] In addition, Plaintiffs were able to identify swaths of documents that they needed after reviewing documents that were produced but each time were forced into a proverbial hand combat to receive them from Defense counsel.

### III. The Accepted Judgment Is Fair and Reasonable

In considering whether a settlement is fair and reasonable, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

---

[3]     On September 25, 2019 the Court granted a motion by Plaintiffs and their counsel to withdraw from representing Plaintiff George Grady.

[4]     Mr. Breud and I wish to stress that while we had substantial disputes with LurieStrupinsky regarding the scope and necessity of production of certain documents, we are not in any way claiming any unethical conduct by LurieStrupinsky.

After approximately two (2) years of litigation, including bitterly contested motion practice for conditional certification under § 216(b) of the FLSA, substantial document discovery, discovery battles and a court supervised months long settlement discussisons, Plaintiffs accepted Defendants' Fed. R. Civ. P. 68 Offer of Judgment in the amount of $40,000 to be divided among the nine (9) Plaintiffs as determined by Plaintiffs.

In the case at bar, the judgment offered and accepted, as well as the settlement of the attorneys' fees were the result of contentious, adversarial litigation, vigorous arm's-length negotiations and a settlement conference before a Magistrate Judge. All parties were represented by highly qualified and experienced counsel representing clients in wage and hour litigation. Moreover, the parties actively sought resolution since the certainty of a negotiated resolution is better than the uncertain outcome of a trial such as in this case where several material factual disputes remain to be resolved.

Plaintiffs decided to accept Defendants' Offer of Judgment notwithstanding Mr. Breud and my recommendation that they reject the offered judgment as insufficient in light of our calculation of Plaintiffs' claimed damages, which showed, based on their allegations in a best-case-scenario, that Plaintiffs were owed collectively almost $165,000 in unpaid wages and overtime and a like amount in liquidated damages.Plaintiffs, however, are persons of limited means and circumstances who work in the moving industry and earn minimum wages. In accepting the offered judgment, Plaintiffs considered two very important factors – the approaching slow winter season in which some of they faced layoffs or furloughs as well as the extreme difficulty in proving their case in light of the discovery battles and Defendants' claims that requested documents had been destroyed by a flood. Essentially, Plaintiffs made an economic decision that the certainty of receiving the offered judgment in time for a winter season outweighed the uncertain potential of recovering damages at all or recovering damages in an amount greater than the offered judgment, at a significantly later date.

Plaintiffs elected to allocate their share of the Proposed Judgment in the following pro rata gross amounts: (1) Jevon Williams $7,117.33; (2) Dimitrije Zivkovic $1,293.34; (3) Mitchell Martinez $5,245.33; (4) Derrick Adams $1,645.34; (5) Daniel Almiral $1,697.34; (6) Gregory Bodie $4,337.33; (7) Patrick Troy Raymond $4,337.33; (8) Thomas Brown $8,349.33; and, (9) Franklin Vargas $5,977.33. As proposed, and in accordance with the IRS Rules, each of the Plaintiffs will receive one-half (1/2) of their apportioned amount as wages reported on an IRS form W2 and the other one-half (1/2) as liquidated damages to be reported on an IRS form 1099.

### IV. Plaintiffs' Counsel Fees Are Reasonable And Should Be Approved

In considering approval of an FLSA settlement, "[t]he court must also sperately assess the reasonableness of plaintiffs' attorney fees, even when the fee is negotiated as part of a settlement agreement rather than judicially determined." *Lliguichuzhca v. Cinema 60 LLC*, 948 F.Supp.2d 362, 366 (S.D.N.Y. 2013) (collecting cases). The purpose of the separate assessment is to make sure that "the interests of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief [counsel] procured for clients." *Wolinsky v. Scholastic Inc.,* 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). But while the court must approve an award of attorneys' fees and costs in a settlement of FLSA claims, the FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees negotiated separetely and after Plaintiff had

accepted Defendants' offer. *Misiewicz v. D'Onofrio General Contractors Corp.*, 2010 WL 2545439 at *5 (E.D.N.Y. May 17, 2010) R&R adopted in *Misiewicz v.D'Onofrio General Contractors Corp.*, 2010 WL 2545472 (E.D.N.Y. June 18, 2010). Indeed, the "Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fee" than the actual settlement itself because it is not the responsibility of the Court to ensure that the employer is protected from overpaying an employee's attorneys' fees and costs." *Id.* In the context of settling FLSA claims, courts should refrain from "disapprov[ing] a settlement on the amount of attorney's fees, since both parties assumingly ha[d] knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length." *See also Wolinsky, supra, at 335-36.*

Only after Plaintiffs accepted Defendants' offer of judgment, the attorneys for the parties began negotiating an attorneys' fee award with a view to avoiding further litigation.  As per the invoices prepared by our respective law firms, Mr. Breud and I had billed Plaintiffs's case for a combined $121,149.50 in fees and $2,384.83 in costs. *See* **Ex. 2** through **Ex. 5.** After negotiating for several weeks, the parties agreed to a total settlement in the amount of $60,000 for attorneys' fees and costs.

I have over 25 years' experience in wage and hour litigation, have litigated well over 450 cases of this type, a vast majority of them collective and class action cases, and have been approved as Rule 23 class counsel in five lawsuits. I have successfully conducted a class action trial before a jury and have conducted numerous bench trials. I have obtained several successful decisions on appeals to the 2nd Circuit whilst other appellate decisions clarified various aspects of employment law as a result of my appeals. My present hourly rate in the Second Circuit is $450 per hour and I have been awarded this rate in SDNY and in EDNY cases. My entries appear on the invoice as RJW.

My firm's personnel who worked on this case were: Kieran X. Bastible (KXB), a senior associate with over fifteen years' employment litigation experience at a regional law firm, billed at $225/hr. Diane Bernard (DDB) a graduate of the Cardozo Law School and a pre-admission associate; Norma Lopez (LA) a holder of Associate Degree in Paralegal Studies possessed of nine years' paralegal experience; Marisa Powell (LA3) is a graduate of New York Law School and Tiffany Yacullo (LA4) is a third year law student at New York Law School. Ms. Bernard, Ms. Lopez, Ms. Powell and Ms. Yacullo were billed at paralegal rates of $125. These rates were also approved in the SDNY cases as well as in a number of EDNY cases which approved FLSA settlements.

Mr. Breud has substantial litigation experience and over fifteen years' experience in employment litigation comparable to mine. Mr. Breud has litigated class action and collective action cases. Mr. Breud and I have collaborated on numerous wage and hour cases. Mr. Breud's stated rate of $450 per hour is eminently reasonable given his experience.

In *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d at 50.

Here, all of the *Goldberger* factors weigh in favor of granting approval of Plaintiff's counsel fee application. Counsel has expended considerable time litigating this case on behalf of the Plaintiffs. Although no novel issues of law were involved, Plaintiffs' counsel devoted significant time to Plaintiffs' case, including the FLSA § 216(b) motion practice, engaging in discovery, preparation of the pre-settlement conference statement, participating in multiple settlement teleconferences, attending a settlement conference in court, analyzing documents that were produced in an effort to estimate the Plaintiffs' damages, interviewing the Plaintiffs, and preparing various other documents.

The risk of an unsuccessful litigation was borne largely by counsel, given that Plaintiffs' counsels' fee arrangement was on a contingent basis. Finally, public policy considerations support granting approval of Plaintiff's counsels' fee application, for if such fee awards were not granted, wage and hour abuses "would go without a remedy because attorneys would be unwilling to take on the risk." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *19-20 (S.D.N.Y. Mar. 2, 2010).

During the Plaintiffs' employment at Movage, the Defendants kept track of the Plaintiffs' time worked and compensation paid on a document referred to as a "Job Summary" which was specific to each job worked. Among other information, each job summary identified the names of the employees assigned to the job, the amount of their compensation for that job, and in some cases the number of hours that the employees worked on that job. The job summaries do not include shipping or delivery addresses for each job. Given the nature of the Plaintiffs' allegations that they were not compensated for time spent preparing for the day's jobs or their travel time throughout the day, and because the job summaries produced did not contain relevant information, such as shipping or delivery addresses, Defendants produced approximately one hundred pages of documents referred to as "Written Binding Estimate,…" which provided the delivery dates, times, shipper's address and the delivery address of each job, among other information. The binding estimates correlate to the job summary because they each use a job specific 6-digit serial number.

In light Defendants' piecemeal document production and missing documents, Mr. Breud and I had to spend an inordinate amount of time to find alternate ways to prove Plaintiffs' claims. We attempted to estimate the number of hours Plaintiffs worked for which they had not been paid. In performing this analysis, we reviewed and attempted to match each binding estimate to each job summary to try and determine whether the amount of time and compensation on each job summary for each of the Plaintiffs was accurate. In order to estimate whether the amount of time and compensation were accurate, we then had to calculate the number of road miles between each point of departure and arrival on a given day and the approximate travel time using Google Maps. We then had to compare the estimated travel time for each job with the time recorded on the applicable job summary report. Consequently, we had to spend hours on end discussing numerous invoices with Plaintiffs to get the best estimates of their work. Had Defendants produced ALL documents that should have been produced, when they were supposed to be produced, the amount of time we spent as reflected in our invoices would have been substantially smaller.

Although Defendants at times acted unreasonably in this action, that does not mean Plaintiffs' attorneys spent an unreasonable amount of time on it. Rather, Plaintiffs' attorneys were required

by their professional obligations to put in an inordinate amount of time solely to vindicate Plaintiffs' rights in the face of Defendants' no-holds-barred strategy. Although the fees are large compared to the actual recovery, that is not unusual in cases such as these, and in this case the disproportion is a direct result of Defendants' chosen strategy. To put it bluntly, it would not be in the interests of justice if Plaintiffs are not awarded the requested fees for all the hours spent by their attorneys. It would contravene the standard for determining attorneys' fees, and, more importantly, it would serve as an incentive to defendants in future cases that, if they act unreasonably, they will benefit by impoverishing attorneys who take on civil rights cases such as this one, and ultimately discourage pursuing such cases, despite the manifest intention of Congress and the New York Legislature to encourage such claims.

Finally, this lawsuit was started by four (4) Plaintiffs, and owing to our efforts in distributing the Notice of Pendency, a total of nine (9) of Defendants' former employees will receive judgment in their favor.

For the foregoing reasons, the extremely reduced fee and costs to be received by Mr. Breud and my firm in the case at bar are fair and reasonable.

### V.    Conclusion

For the reasons outlined above, the Proposed Judgment in this matter is fair and reasonable to all parties. ***See Johnson v. Brennan***, 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y., Sept. 16, 2011) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

The Proposed Judgment in this case represents a reasonable compromise over the contested issues, and thus the parties request that the Court approve the settlement and dismiss the case with prejudice.

Respectfully submitted,

*/s/Robert Wisniewski*
Robert Wisniewski

*/s/ Albert Adam Breud, II*
Albert Adam Breud, II

cc: Joshua Lurie, Esq.
   Eugene Strupinsky, Esq.
   LurieStrupinsky, LLP
   *Attorneys for Defendants*