UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEVON WILLIAMS; MITCHELL
MARTINEZ; DIMITRIJE ZIVKOVIC; and
DERRICK ADAMS,

                              Plaintiffs,

                    -v.-

MOVAGE, INC.; BAJO VUJOVIC; and
CHRISTIAN DOE,

                              Defendants.

17 Civ. 2628 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

On September 19, 2019, the parties informed the Court that Plaintiffs had accepted an offer of judgment from Defendants pursuant to Federal Rule of Civil Procedure 68.  (Dkt. #83).  The Court ordered the parties to submit their Rule 68 settlement to the Court for a *Cheeks* review, although acknowledging that the Second Circuit was reviewing whether such a review was required. (Dkt. #84).  Plaintiffs submitted the proposed judgment to the Court for review on December 3, 2019 (Dkt. #93), and the parties appeared before the Court on December 6, 2019, to discuss the proposed judgment.  On the same day, the Second Circuit issued its decision in *Yu* v. *Hasaki Restaurant, Inc.*, No. 17-3388-cv (2d Cir. Dec. 6, 2019), holding that judicial approval of Rule 68(a) offers of judgment is not required.

Therefore, the Court ORDERS the parties to file letters to the Court, not exceeding three pages each, by December 18, 2019, explaining how they believe the Court and parties should proceed given the Second Circuit's ruling.

SO ORDERED.

Dated:  December 6, 2019
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2018

ARGUED: OCTOBER 10, 2018
DECIDED: DECEMBER 6, 2019

No. 17-3388-cv

MEI XING YU, individual, on behalf of all other employees similarly
situated,
*Plaintiff-Appellee,*

*v.*

HASAKI RESTAURANT, INC., SHUJI YAGI, KUNITSUGA NAKATA,
HASHIMOTO GEN,
*Defendants-Appellants,*

JANE DOE AND JOHN DOE #1–10,
*Defendants.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 16 Civ. 6094 – Jesse M. Furman, *Judge.*

————

Before: WALKER, CALABRESI, AND LIVINGSTON, *Circuit Judges.*

————

Mei Xing Yu, an employee of Hasaki Restaurant, filed a claim alleging violations of the Fair Labor Standards Act's ("FLSA" or the "Act") overtime provisions.  Soon thereafter, Hasaki Restaurant sent Mei Xing Yu an offer of judgment, pursuant to Federal Rule of Civil Procedure 68(a), for $20,000 plus reasonable attorneys' fees.  After Mei Xing Yu accepted the offer, the parties filed the offer and notice of acceptance with the district court.  Before the Clerk of the Court could enter the judgment, however, the district court *sua sponte* ordered the parties to submit the settlement agreement to the court for a fairness review and judicial approval, which the district court believed was required under the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Both parties disputed the district court's interpretation of the FLSA, Rule 68, and *Cheeks*, and filed an interlocutory appeal.  Upon review of the text of the Act and judicial precedents interpreting the Act, we hold that judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims.  Accordingly, we REVERSE and VACATE the district court's order and REMAND with instructions to direct the Clerk of the Court to enter the judgment as stipulated in the accepted Rule 68(a) offer.  Judge Calabresi dissents in a separate opinion.

————

KELI LUI, WILLIAM M. BROWN, Hang and Associates, PLLC, Flushing, NY, *for Plaintiff-Appellee*.

LILLIAN M. MARQUEZ (Louis Pechman, Laura Rodriguez, *on the brief*), Pechman Law Group PLLC, New York, NY, *for Defendants-Appellants*.

ADINA H. ROSENBAUM (Sean M. Sherman, Adam
R. Pulver, *on the brief*), Public Citizen Litigation
Group, *for Court-Appointed Amicus Curiae.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Mei Xing Yu, an employee of Hasaki Restaurant, filed a claim alleging violations of the Fair Labor Standards Act's ("FLSA" or the "Act") overtime provisions. Soon thereafter, Hasaki Restaurant sent Mei Xing Yu an offer of judgment, pursuant to Federal Rule of Civil Procedure 68(a), for $20,000 plus reasonable attorneys' fees. After Mei Xing Yu accepted the offer, the parties filed the offer and notice of acceptance with the district court. Before the Clerk of the Court could enter the judgment, however, the district court *sua sponte* ordered the parties to submit the settlement agreement to the court for a fairness review and judicial approval, which the district court believed was required under the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Both parties disputed the district court's interpretation of the FLSA, Rule 68, and *Cheeks*, and filed an interlocutory appeal. Upon review of the text of the Act and judicial precedents interpreting the Act, we hold that judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims. Accordingly, we REVERSE and VACATE the district court's order and REMAND with instructions to direct the Clerk of the Court to enter the judgment as stipulated in the accepted Rule 68(a) offer. Judge Calabresi dissents in a separate opinion.

## BACKGROUND

Plaintiff-appellee Mei Xing Yu worked as a sushi chef at a restaurant owned and operated by appellant Hasaki Restaurant, Inc. On August 1, 2016, Mei Xing Yu filed a complaint against Hasaki

Restaurant and various individual owners and managers of Hasaki Restaurant (collectively "Hasaki") in the Southern District of New York on behalf of himself and all other employees similarly situated, alleging violations of the overtime provisions of the Fair Labor Standards Act and New York labor laws.

On November 23, 2016, Hasaki mailed Mei Xing Yu a Rule 68 offer of judgment for $20,000 plus reasonable attorneys' fees, costs, and expenses through the date of the offer. Mei Xing Yu timely accepted the offer of judgment, and on December 8, 2016, Mei Xing Yu filed a letter with the district court (Furman, *J.*) notifying the court of his acceptance.

On December 9, 2016, Judge Furman ordered the parties to submit their settlement agreement to the district court along with a joint letter explaining why the settlement should be approved as fair and reasonable. Judge Furman explained that he believed our decision in *Cheeks v. Freeport Pancake House, Inc.*[1] required him to scrutinize the parties' settlement to ensure it was fair and reasonable. *Cheeks* held that stipulated dismissals settling FLSA claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) require the approval of either the district court or the Department of Labor ("DOL"). Alternatively, the district court offered the parties the opportunity to argue why they did not believe that judicial approval of the Rule 68(a) offer of judgment was required.

The parties then submitted a joint letter on December 22, 2016, arguing that they did not need judicial approval of their Rule 68(a) offer of judgment to settle Mei Xing Yu's FLSA claims. On January 13, 2017, the Secretary of Labor filed an amicus brief in a separate case in the Southern District of New York, *Sanchez v. Burgers & Cupcakes*

---

[1] 796 F.3d 199 (2d Cir. 2015).

*LLC*,[2] arguing that judicial approval is required when a Rule 68(a) offer of judgment is accepted by a plaintiff raising FLSA claims. Pursuant to a district court order, the parties filed supplemental briefs in response to the Secretary's amicus brief in *Sanchez*, in which the parties maintained their position that judicial approval was not required.

On March 20, 2017, the district court issued a brief order concluding that "judicial approval of the parties' settlement is required, notwithstanding the fact that it was reached pursuant to Rule 68(a) of the Federal Rules of Civil Procedure."[3]   Shortly thereafter, the district court issued a follow-up opinion.[4]  The district court reasoned that although Rule 68(a) is phrased in mandatory terms—requiring the clerk of the court to enter judgment of an accepted offer of judgment without any reference to judicial approval—there are exceptions to the Rule's mandatory terms, such as class action and bankruptcy settlements, which require judicial approval.[5]  Accepting the fact that there are exceptions to Rule 68(a)'s mandatory language, the district court concluded that FLSA claims "fall within the narrow class of claims that cannot be settled under Rule 68 without approval by the court (or the DOL)."[6]  Relying on our opinion in *Cheeks,* the district court concluded that while "*Cheeks* may not apply *a fortiori* to a Rule 68 FLSA settlement given its reliance on the language of Rule 41, its reasoning—combined with the fact that

---

[2] Amicus Br., *Sanchez v. Burgers & Cupcakes LLC*, No. 16-cv-3862 (S.D.N.Y. Jan 13., 2017), ECF No. 43.

[3] Order, *Mei Xing Yu v. Hasaki Rest., Inc.*, 16-cv-6094 (S.D.N.Y. Mar. 20, 2017), ECF No. 24.

[4] Opinion and Order, *Hasaki Rest., Inc.*, ECF No. 27; *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 319 F.R.D 111 (S.D.N.Y. 2017).

[5] *Hasaki Rest., Inc.*, 319 F.R.D. at 113–14.

[6] *Id.* at 114.

Rule 68 is not always . . . mandatory—compels the conclusion that parties may not evade the requirement for judicial (or DOL) approval by way of Rule 68."[7]

Noting the existence of "substantial ground for difference of opinion" on the issue, and that the lower courts were divided on the question, the district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b).[8] The parties filed a timely notice of appeal in the district court, but did not file a timely § 1292(b) petition for permission to take an interlocutory appeal in this court. Nonetheless, on October 23, 2017, a panel of our court granted the parties' motion to file a late § 1292(b) petition and then granted the petition.[9] In addition, because both Mei Xing Yu and Hasaki took the same position before the district court, a panel of our court granted the Public Citizen Litigation Group's ("PCLG") motion to be appointed amicus curiae in order to defend the district court's ruling.[10] We also invited and received an amicus brief from the Secretary of Labor.[11]

## DISCUSSION

The question before us is straightforward: whether acceptance of a Rule 68(a) offer of judgment that disposes of an FLSA claim in litigation needs to be reviewed by a district court or the DOL for fairness before the clerk of the court can enter the judgment. The question is one of statutory interpretation. Therefore, "we begin, as we must, with a careful examination of the statutory text" of both Rule 68(a) and the FLSA.[12]

---

[7] *Id.* at 116.
[8] *Id.* at 117.
[9] *See* No. 17-1067, ECF No. 56 (Oct. 23, 2017).
[10] *See* No. 17-3388, ECF No. 38 (Nov. 28, 2017). We thank PCLG for their service as court-appointed amicus.
[11] *Id.*
[12] *See Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1721 (2017).

## I.     Federal Rule of Civil Procedure 68

Rule 68(a) states:

> At least 14 days before the date set for trial, a party
> defending against a claim may serve on an opposing
> party an offer to allow judgment on specified terms, with
> the costs then accrued.  If, within 14 days after being
> served, the opposing party serves written notice
> accepting the offer, either party may then file the offer
> and notice of acceptance, plus proof of service.  The clerk
> must then enter judgment.[13]

Rule 68(d) provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made,"[14] which includes attorney's fees.[15]  Rule 68(b) discusses the effect of an unaccepted offer, and Rule 68(c) provides a mechanism for making an offer after a party's liability has been determined but the extent of liability remains to be determined.[16]

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation. . . . The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."[17]

On its face, Rule 68(a)'s command that the clerk *must* enter judgment is mandatory and absolute.[18]  The Sixth Circuit has

---

[13] Fed. R. Civ. P. 68(a).

[14] Fed. R. Civ. P. 68(d).

[15] *Marek v. Chesney*, 473 U.S. 1, 9 (1985).

[16] Fed. R. Civ. P. 68(b), (c).

[17] *Marek*, 473 U.S. at 5.

[18] *See* 12 Charles A. Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 3005 (3d ed.) ("Except for . . . rare situations . . . courts are directed by Rule 68 to enter judgment if an offer has been accepted.").

described a district court's role in entering a Rule 68(a) judgment as "ministerial rather than discretionary," because the plain language of the Rule "leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted."[19]   Other circuits have said substantially the same thing,[20] as has this circuit, though in less obvious terms.[21]  Both the common usage of the word "must" and the dictionary definition of that word support this understanding of Rule 68(a)'s mandatory nature.[22]   There is also no doubt that Rule 68(a) applies in this case: Rule 1 provides that the Federal Rules of Civil Procedure "govern the procedure in *all* civil actions and proceedings in the United States district courts . . . ."[23]

Despite the mandatory language, however, amici and the district court contend that there are "rare situations" in which a district court must approve the proposed resolution of the pending litigation before the stipulated judgment can take legal effect.[24]  They

---

[19] *Mallory v. Eyrich,* 922 F.2d 1273, 1278–79 (6th Cir. 1991).

[20] *See Ramming v. Nat. Gas Pipeline Co. of Am.,* 390 F.3d 366, 370 (5th Cir. 2004) ("A Rule 68 Offer of Judgment is usually considered self-executing."); *Perkins v. U.S. W. Comm'cns,* 138 F.3d 336, 338 (8th Cir. 1998) ("Rule 68 leaves no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted."); *Webb v. James,* 147 F.3d 617, 621 (7th Cir. 1998) ("Because of this mandatory directive, the district court has no discretion to alter or modify the parties' agreement."); *cf. Jordan v. Time, Inc.,* 111 F.3d 102, 105 (11th Cir. 1997) (determining that the standard of review for a district court's construction of Rule 68 is *de novo* because "the mandatory language of the rule leaves no room for district court discretion").

[21] *See Bowles v. J.J. Schmitt & Co.,* 170 F.2d 617, 620 (2d Cir. 1948) (stating that one of the "only two occasions under the rules when the clerk may enter final judgment without action of the judge or jury . . . [is] upon notice of acceptance of an offer of judgment under rule 68").

[22] *See Must, Webster's New International Dictionary* (3d ed. 1999) (1a: "is commanded or requested to"; 1b: "is urged to: ought by all means to"; 4: "is required by law, custom, or moral conscience to").

[23] Fed. R. Civ. P. 1 (emphasis added).

[24] Wright & Miller, § 3005.

point to various examples in support of their argument that Rule 68(a)'s facially mandatory nature is riddled with "a host of situations in which parties may not, without approval of either or both a government agency and a court, enter into a settlement."[25]

The first category of examples involves proceedings that are governed by federal rules that explicitly require judicial approval before settlement.   For instance, Federal Rule of Bankruptcy Procedure 9019 specifically requires judicial approval of settlements, and the D.C. Circuit has held that Rule 68(a) offers of judgment settling bankruptcy proceedings must be approved by the bankruptcy court to become effective.[26]  Other circuits have required Rule 68(a) offers of judgment settling class action suits to be approved by the district court before the judgment can be entered.[27]  These circuits have relied on Federal Rule of Civil Procedure 23, which plainly states that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised *only* with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate . . . ."[28]

Amici and the district court also refer to substantive statutes that specifically require the district court's consent before cases involving those statutory causes of action may be settled.   For instance, New York law requires court approval to settle any action "commenced by or on behalf of [an] infant, incompetent or

---

[25] *Hasaki Rest., Inc.*, 319 F.R.D. at 113; *see also* PCLG Br. at 19–20; Sec'y of Labor Br. at 25–26.

[26] *Gordon v. Gouline*, 81 F.3d 235, 239 (D.C. Cir. 1996).

[27] *See id.* at 239–40 (collecting cases).

[28] Fed. R. Civ. P. 23(e), (e)(2) (emphasis added).

conservatee."[29]   And the False Claims Act ("FCA") unambiguously states that a *qui tam* action "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."[30]

Our circuit has yet to endorse any of these asserted exceptions to Rule 68(a)'s mandatory command that the clerk of the court enter judgment once an offer has been accepted and filed with the court.[31] There is no need for us to consider the validity of these exceptions because they are not at issue here.   But, assuming for the sake of argument that Rule 68(a) offers of judgment are susceptible to judicial review in certain situations, we agree with the district court that the

---

[29] N.Y. C.P.L.R. § 1207; *see also id.* at § 1208.

[30] 31 U.S.C. § 3730(b)(1).

[31] The Dissent and amici suggest that illegal acts and injunctive relief may be further exceptions to Rule 68.  *See Hasaki Rest., Inc.,* 319 F.R.D. at 114.  While neither of these situations are at issue here, we note that requiring courts to scrutinize *all* Rule 68 offers for illegality would transform Rule 68's ministerial act into a searching inquiry, a judicial modification of the Rule's plain text which we are reluctant to endorse.   In the event an illegal judgment was entered pursuant to Rule 68, the defendant in a subsequent enforcement action could raise illegality as a defense.   *See infra* note 101 and accompanying text.   Alternatively, either party could challenge the judgment via a Rule 60 motion. *See, e.g., Laskowski v. Buhay,* 192 F.R.D. 480, 484 (M.D. Pa. 2000) (considering and denying a defendant's motion seeking to void a Rule 68 judgment through Rule 60); *see also infra* note 102 and accompanying text.   As to injunctive relief, it seems that *Marek* itself involved the use of Rule 68 in a suit where the plaintiff requested some injunctive relief.   *See* Roy D. Simon, Jr., *The New Meaning of Rule 68: Marek v. Chesny and Beyond,* 14 N.Y.U. Rev. L. & Soc. Change 475, 485 (1986) (discussing the complaint in *Marek*). At any rate, we need not address the Rule's application in this context.   Even assuming *arguendo* that judgments providing for injunctive relief issue only upon a judge's review, given that such relief involves the exercise of the court's discretion, *see Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.") (internal quotation marks omitted), this point is simply not germane to Rule 68's scope outside of this context.

proper inquiry is "whether FLSA claims fall within the narrow class of claims that cannot be settled under Rule 68 without approval by the court (or the DOL)."[32]  In other words, we must determine, as the Supreme Court in *Marek v. Chesney* explained, whether the FLSA contains "'the necessary clear expression of congressional intent' required 'to exempt the statute from the operation of' Rule 68."[33]  We think the answer is no for the reasons that follow.

## II.    The FLSA

The FLSA contains two primary worker protections: first, it guarantees covered employees a federal minimum wage;[34] and second, it provides covered employees the right to overtime pay at a rate of one-and-a-half their regular rate for hours worked above forty hours a week.[35]  "The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"[36]

Ever since the FLSA was enacted in 1938, it has allowed for a private right of action by a covered employee against any employer who violates the Act's minimum wage and overtime pay provisions to recover unpaid wages, together with "an additional equal amount as liquidated damages."[37]  In 1949, Congress amended the FLSA and

---

[32] *Hasaki Rest., Inc.,* 319 F.R.D. at 114.

[33] *Marek,* 473 U.S. at 11–12 (quoting *Califano v. Yamasaki,* 422 U.S. 682, 700 (1979) (modifications incorporated)).

[34] *See* 29 U.S.C. § 206.

[35] *See* 29 U.S.C. § 207.

[36] *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a) (captioned "Congressional finding and declaration of policy)).

[37] Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1069 (codified as amended at 29 U.S.C § 216(b) (2018)).

authorized the Administrator of the Wage and Hours Division of the DOL to "supervise payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees."[38]  Congress also authorized the Administrator to bring an action on behalf of, and upon the written request of, a covered employee to recover unpaid minimum wages or overtime compensation.[39]

These provisions providing a private right of action, DOL-supervised payment, or DOL action on behalf of covered employees all remain in effect today and are contained in § 216 of the Act, with minor amendments not material here.[40]  Nowhere in the text of the current or prior versions of § 216, however, is there a command that FLSA actions cannot be settled or otherwise dismissed without approval from a court.  The provisions of § 216 simply set forth different ways in which covered employees (or the DOL on behalf of covered employees) may assert the substantive rights afforded to them by the Act.  The lack of any explicit requirement for judicial approval before a settlement or dismissal can be entered under § 216 is what distinguishes the FLSA from the statutory examples the district court and amici have cited as evidence of exceptions to Rule 68(a)'s mandatory character.  Each of those statutes contains an explicit requirement that the court must approve the dismissal or settlement before it can be entered; the FLSA contains no similar

---

[38] Fair Labor Standards Act of 1938, Pub. L. No. 81-393, 63 Stat. 919 (1949) (codified as amended at 29 U.S.C. § 216(c) (2018)).

[39] *Id.*  This provision has since been amended, such that this power is now vested in the Secretary of Labor, rather than the Administrator.  Furthermore, it is no longer necessary for the Secretary to receive the written request of an employee for the Secretary to initiate an action on behalf of a covered employee.  *See* 29 U.S.C. § 216(c) (2018).

[40] *See* 29 U.S.C. §§ 216(b), (c) (2018).

command.

Ordinarily, the lack of any textual requirement for judicial approval would be the end of the analysis because "the first canon of statutory construction is that 'a legislature says in a statute what it means and means in a statute what is says there.' Indeed, 'when the words of a statute are unambiguous . . . this first canon is also the last: judicial inquiry is complete.'"[41]  Nonetheless, amici and the Dissent argue that we should read a judicial review requirement into the FLSA for four reasons: (1) Supreme Court precedents interpreting FLSA rights as nonwaivable require it; (2) the statutory history of the FLSA demonstrates a Congressional intent to only permit judicially or DOL-approved settlements; (3) this circuit's decision in *Cheeks*, which explained the need for judicial review of Rule 41(a)(1)(A)(ii) dismissals with prejudice of FLSA claims, compels a similar result with respect to Rule 68 offers of judgment; and (4) it would further "the underlying purpose of the FLSA, which is a uniquely protective statute."[42]  We address each of these points in turn.

### a.    Supreme Court Precedent

Amici's argument for why we must read a judicial approval requirement into the FLSA rests upon a few decisions by the Supreme Court beginning in 1945.  Amici asserts that these decisions stand for the proposition that "there are only two ways in which FLSA claims can be settled or compromised by employees": either through a DOL-supervised payment of unpaid wages by the employer under § 216(c), or a stipulated judgment approved by a district court in a private

---

[41] *United States v. Piervinanzi,* 23 F.3d 670, 677 (2d Cir. 1994) (internal citation and alteration omitted) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)).

[42] Sec'y of Labor Br. at 6.

action for unpaid wages under § 216(b).[43]  We disagree.

In *Brooklyn Savings Bank v. O'Neil,* the Supreme Court considered "whether in the absence of a bona fide dispute between the parties as to liability, [an employee's] written waiver of his right to liquidated damages under [the FLSA] bars a subsequent action to recover liquidated damages."[44]  The Court acknowledged that nothing in "the statutory language, the legislative reports nor the debates indicates that the question at issue was specifically considered and resolved by Congress."[45]  The Court believed, however, that the Congressional intent "to protect certain groups of the population from substandard wages and excessive hours"[46] counseled in favor of concluding that Congress did not intend for the FLSA's minimum wage, overtime, and liquidated damages rights to be capable of waiver by employees.  It reasoned that "waiver of statutory wages by agreement would nullify the purpose of the Act," as would "waiver of the employee's right to liquidated damages."[47]  Thus, it concluded that "contracts for waiver of liquidated damages . . . are void as contrary to public policy," and will not be entertained by courts as an employer's affirmative defense in a subsequent action by an employee to recover liquidated damages.[48]

In the two consolidated cases[49] under consideration in *Brooklyn Savings*, the employees released their FLSA rights not as part of a

---

[43] PCLG Br. at 12 (quoting *Hasaki Rest., Inc.,* 319 F.R.D. at 112).

[44] 324 U.S. 697, 704 (1945).

[45] *Id.* at 705–06.

[46] *Id.* at 706–07.

[47] *Id.* at 707.

[48] *Id.* at 710.

[49] *Brooklyn Savings* actually dealt with three consolidated cases, but the third case dealt with a separate issue of whether an employee suing to collect unpaid wages under FLSA is also entitled to interest.

settlement of a bona fide dispute between the employers and employees, but as a "mere waiver."[50]   The Court stressed this distinction.[51]   *Brooklyn Savings*' holding that mere waivers of an employee's right to liquidated damages are unenforceable expressly left open the question of "what limitation, if any, [§ 216(b)] of the Act places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement."[52]

That unresolved question was partially addressed the following year in *D.A. Schulte, Inc. v. Gangi*.[53]   Unlike in *Brooklyn Savings*, the employees in *Gangi* did not simply sign away their rights. Under threat of suit by the employees, the employer paid the full amount of back pay and, in return, obtained a release of the employees' statutory right to liquidated damages, notwithstanding the employer's sincere belief that the employees were not covered by the FLSA because the interstate commerce nexus was minimal.[54]   "The primary issue presented [was] whether the [FLSA] precludes a bona fide settlement of a bona fide dispute over the coverage of the Act on a claim for overtime compensation and liquidated damages where the employees receive the overtime compensation in full."[55]

The Supreme Court sided with the employees.   The Court acknowledged that the releases were obtained in settlement of a bona fide dispute as to coverage, but, adopting the reasoning from *Brooklyn*

---

[50] 324 U.S. at 703–04, 713–14.
[51] *Id* at 713–14.
[52] *Id.* at 714.
[53] 328 U.S. 108 (1946).
[54] *Id.* at 111–12.
[55] *Id.* at 110.

*Savings*, it held that "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage."[56] The Court, however, expressly reserved the question of whether waiver or compromise of FLSA rights is permissible "in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment."[57]

Relevant to our analysis, the Court, in dicta in a footnote, also seemed to indicate that the reasons behind not permitting waivers in private settlements might not hold for stipulated judgments in judicial actions brought by employees pursuant to § 216(b).[58] In pertinent part, the Court stated:

> Petitioner draws the inference that bona fide stipulated judgments on alleged Wage-Hour violations for less than the amounts actually due stand in no better position than bona fide settlements. Even though stipulated judgments may be obtained, where settlements are proposed in controversies between employers and employees over violations of the Act, by the simple device of filing suits and entering agreed judgments, we think the requirements of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties. At any rate the suggestion of petitioner is argumentative only as no judgment was entered in this case.[59]

In the intervening seven decades since *Gangi*, the Supreme Court has never resolved these lingering questions about when and how employees can release their FLSA rights. In 1981, the Court

---

[56] *Id.* at 114–15.

[57] *Id.*

[58] *Id.* at 113 n.8.

[59] *Id.*

reiterated in passing its holdings in *Brooklyn Savings* and *O'Neil* in *Barrentine v. Arkansas-Best Freight Systems, Inc.*, but did not expand the holdings from those earlier decisions or otherwise consider the questions those decisions left open.[60]

Notably absent from any of these Supreme Court interpretations of the FLSA is any discussion on whether a settlement or dismissal of an action to vindicate FLSA rights under § 216(b) is conditioned on court approval. Even the dicta in the footnote in *Gangi* did not discuss whether judicial approval was actually necessary before parties could enter a stipulated judgment resolving FLSA claims. The Supreme Court never said, as the Dissent suggests, that "court-*supervised* settlements might be valid under the FLSA."[61] Rather, the Court stated that "by the simple device of filing suits and entering agreed judgments, we think the requirement of pleading the issues and submitting the judgment to judicial scrutiny may *differentiate* stipulated judgments from compromises by the parties."[62] In other words, the act of filing the suit, airing the parties' dirty laundry in public and before a judge, *and then* coming to an agreement distinguishes stipulated judgments from private, back-room compromises that could easily result in exploitation of the worker and the release of his or her rights. Indeed, the Supreme Court itself has at least on one occasion ordered a district court to enter a stipulated judgment in a FLSA action for only two-thirds the amount due in statutory wages and liquidated damages while the case was on appeal

---

[60] 450 U.S. 728, 740 (1981). *Barrentine* addressed the unrelated question of whether employees could bring an action alleging an FLSA violation after they had unsuccessfully submitted a claim based on the same underlying facts to a joint grievance committee pursuant to their union's collective-bargaining agreement, answering the question in the negative.

[61] Diss. Op. at 10 (emphasis added).

[62] *Gangi*, 328 U.S. at 114 n.8 (emphasis added).

apparently without reviewing the stipulation for fairness.[63]  Rule 68(a) judgments are one such form of stipulated judgment and, by that Rule's plain terms, do not require court-supervision.   Nothing the Supreme Court has said suggests a different rule, much less amounts to "'the necessary clear expression of congressional intent' required 'to exempt the statute from the application of Rule 68.'"[64]

For this reason, we cannot accept the Dissent's characterization of our opinion as creating a "third, implied method of resolving" FLSA claims.[65]   The Dissent refers to the settling of FLSA claims through Rule 68(a) judgments as "private settlements" like those prohibited by the Supreme Court in *Brooklyn Savings* and *Gangi*.[66]  But Rule 68(a) judgments are not at all like those private settlements; they are publicly-filed, stipulated judgments between parties to an action brought in a court of competent jurisdiction after litigation has been commenced pursuant to § 216(b) of the FLSA.   Nothing in the Supreme Court's decisions prohibit settling FLSA claims through such stipulated judgments.   To the contrary, as conceded by the Dissent, these decisions allow that settlements in the context of

---

[63] *See North Shore Corp. v. Barnett,* 323 U.S. 679 (1944) ("The judgment of the Circuit Court of Appeals is vacated, the judgment of the District Court is modified in accordance with the stipulations signed by counsel for the parties and the case is remanded to the District Court for the Southern District of Florida with directions to enter the judgment as modified."); *see also Gangi,* 328 U.S. at 144 n.8 (referencing *Barnett* as an example of a settlement of a FLSA claim by stipulated judgment ordered to be entered by the Supreme Court); Reply Br. for the Pet'r, *Brooklyn Savings Bank v. O'Neil,* 1945 WL 48260, at *19 (U.S. Jan. 1945) (describing the terms of the stipulated judgment as recovery to two-thirds of the statutory wages and liquidated damages owed).

[64] *See Marek,* 473 U.S. at 11–12 (quoting *Califano,* 422 U.S. at 700 (modifications incorporated)).

[65] *See* Diss. Op. at 1–2.

[66] *See, e.g., id.* at 2, 3, 4, 6, 13, 14.

ongoing FLSA litigation may be permissible.[67]  Nor, contrary to the
Dissent's intimation, have any other circuits held that FLSA claims
cannot be settled pursuant to a Rule 68(a) stipulated judgment
without judicial approval.[68]  The laundry list of courts and cases
referenced by the Dissent hold only that purely private settlements of
FLSA claims, independent of any litigation, are prohibited without
judicial approval or DOL supervision; this is a holding that is
compelled by *Gangi* and with which we take no issue.  None of those
courts or cases addressed a Rule 68(a) stipulated judgment, the type
of settlement at issue in this case.

    In *Brooklyn Savings* and *Gangi*, the Supreme Court held that
private contractual waivers of worker's FLSA rights were against
public policy.  This is a very different thing from holding that judicial
approval is required before parties, usually represented by counsel,
may settle a litigated FLSA dispute pursuant to Rule 68(a).

    Despite the absence of any discussion by the Supreme Court in
*Brooklyn Savings*, *Gangi*, or *Barrentine* as to whether judicial approval
is required to settle actions raising FLSA claims, amici assert that
these cases laid "the foundation" for such a requirement, and from
that unsure foundation, make the leap that Rule 68(a) offers of
judgment settling FLSA claims must be approved by a judge before
the clerk may enter the judgment.[69]  We are not prepared to make that
interpretive leap in the context of Rule 68(a) offers of judgment absent
any indication from Congress or the Supreme Court that the FLSA
requires such judicial approval.[70]  This is especially so when the

---

[67] *See Gangi*, 328 U.S. at 114 n.8; *see also* Diss. Op. at 9–10.

[68] *See* Diss. Op. at 17.

[69] Sec'y of Labor Br. at 13; *see also* PCLG Br. at 11–13.

[70] Our circuit has made that leap with respect to voluntary dismissals with
prejudice under Rule 41(a)(1)(A)(ii) in *Cheeks*.  We decline to do the same with

language of the Act itself fails to provide a scintilla of textual support for such a requirement, in the face of Rule 68(a)'s explicit textual command that the clerk of the court *must* enter stipulated judgments.[71]

Amici also point to the fact that the Supreme Court concluded that FLSA rights are not waivable despite the absence of any "'specific provisions prohibiting waiver of rights . . . or providing means by which compromises and settlements can be approved.'"[72] To be sure, there is nothing in the text of the FLSA specifically declaring that the minimum wage, overtime pay, and liquidated damages rights created by the Act cannot be waived. Those cases, however, did not address the question of prior judicial approval of § 216 settlements under Rule 68(a), and we discern from them no requirement that a court must make the same sort of purposive interpretive leap in resolving a question they did not address.

### b. Extrinsic Evidence and Statutory History[73]

Appointed amicus contends that the lack of any judicial approval requirement in the text of the FLSA is not dispositive,

---

respect to Rule 68(a) offers of judgment, as will be discussed. *See infra,* Section II(a).

[71] *See Califano,* 442 U.S. at 700 (requiring a "necessary clear expression of congressional intent to exempt" a statutorily-created cause of action "from the operation of the Federal Rules of Civil Procedure," since Rule 1 provides that the Rules govern the procedure in the United States district courts in *all* suits of a civil nature (internal quotation marks omitted)).

[72] *Id.* at 15–16 (brackets omitted) (quoting *Brooklyn Savings,* 324 U.S. at 713).

[73] The dissent accuses the majority of "ignoring completely" the statutory history in this case and of confusing statutory history with legislative history. This is a misreading of the opinion. While we consider extrinsic evidence, including legislative history, as unhelpful when the statutory text is unambiguous, we do not "ignore" the statutory history. Indeed, we fully address it in this section in discussing the 1949 Amendment that added § 216(c), but we simply reach a different conclusion than that of the dissent.

because "a statute's requirements . . . also include judicial interpretations of the statute, which are reached through application of traditional tools of statutory construction, including examination of the statute's text, legislative history, structure, and purpose."[74]  We find this argument unpersuasive.  A statute's requirements are not so holistically determined.

As we stated above, the first "cardinal canon" of statutory interpretation is to look at the text.[75]  It is only when a statute's text is ambiguous that we turn to other tools of statutory interpretation to help clarify the ambiguity.[76]  In this case, there is nothing ambiguous about whether the FLSA requires judicial approval of offers of judgment before actions brought under § 216(b) can be settled or dismissed, because the text of the FLSA is devoid of any such requirement, even as it details, in § 216(b), the precise contours of how employees can file suit to vindicate their FLSA rights.

Section 216(b) states that an employer is liable for unpaid wages and an equal amount in liquidated damages; that such an action may be maintained in any federal or state court of competent jurisdiction; that such an action may be commenced by an individual employee or by an employee on behalf of other employees similarly situated; that no employee shall be considered a party plaintiff to any such collective action unless he gives his consent in writing to become a party, and such consent is filed with the court; that in such an action,

---

[74] PCLG Br. at 15 (internal quotation marks omitted).

[75] *Germain*, 503 U.S. at 253.

[76] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise *ambiguous* terms." (emphasis added)).

reasonable attorney's fees and costs are to be paid by the defendant; and that an employee's private right of action terminates if the Secretary of Labor decides to initiate an action on behalf of employees.[77]  In this context of painstaking attention to procedural requirements, "[w]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply."  *Jama Immigration & Customs Enforcement*, 543 U.S. 335, 341 (2005).  Given that "Congress has shown elsewhere in the same statute" how to require supervision of settlements, *id.* § 216(b)'s silence as to whether judicial approval is required before an action initiated by employees under the provision can be settled via Rule 68(a) (or any other procedure) speaks volumes.  Finding not even arguable ambiguity[78] as to this question in the statute's text, there is no need to turn to extrinsic evidence to help decipher the statute.[79]

---

[77] *See* 29 U.S.C. § 216(b).

[78] The Dissent takes issue with our characterization of the text as unambiguous because it is absolutely silent as to any judicial review requirement.  We agree that ambiguity usually goes to the meaning of words.  *See* Diss. Op. at 4.  But this is because parties seldom make the argument that a statute requires something despite the absence of any statutory hint of such a requirement.  Ambiguity usually comes into play when the parties disagree about what a statute says because parties can reasonably differ over how to interpret the words of a statute.  *See, e.g., MCI Telecommunications Corp. v. AT&T Co.,* 512 U.S. 218, 227 (debating the scope of the FCC's authority to "modify" any requirement of § 203 of the Communications Act and noting that "most cases of verbal ambiguity in statutes involve . . . a selection between accepted alternative meanings shown as such by many dictionaries").  A statute that is utterly silent as to an alleged requirement is equally unambiguous.  Our allegedly "unusual" use of the term unambiguous, according to the Dissent, is the product of Amici and the Dissent's even more unusual argument that silence can breed ambiguity.  Judicial insertion of a positive command into a statute that is silent on the point goes beyond interpretation; it is an usurpation of the legislative function.

[79] Even if we were to consider legislative history, nothing in that history indicates Congress intended for judicial approval to be required before actions raising FLSA claims could be settled or dismissed, and amici have pointed none.

The Dissent points to the 1949 amendment of the FLSA, in which Congress added § 216(c) and authorized the DOL to supervise private settlements of FLSA claims, as evidence that Congress intended to prohibit the private settlement of all FLSA claims unless supervised by the DOL or a court.[80]  This amendment does not affect our understanding of whether the FLSA requires *judicial* approval of a Rule 68(a) stipulated judgment.  The amendment only grants *the DOL* authority to supervise private FLSA settlements with finality; it says nothing about whether courts must approve stipulated judgments or other settlements or dismissals.  Furthermore, and as discussed, there is a critical distinction between purely private settlements between parties and stipulated judgments between parties, the latter of which occur in the context of publicly-filed, ongoing litigation subject to judicial scrutiny.[81]  The ability of parties to enter stipulated judgments once a case has been publicly filed, pleaded, and submitted to judicial scrutiny does not, as the Dissent contends,[82] render § 216(c) superfluous, because that section continues to apply to private settlements outside the context of litigation.[83]  At bottom, we do not believe it is reasonable to interpret

---

[80] *See* Diss. Op. at 11–13.

[81] *See supra* Section II(a).; *see also Gangi,* 328 U.S. at 113 n.8.

[82] *See* Diss. Op. at 6–7.

[83] Far from being superfluous, the statutory history relied on by the Dissent supports the view that Congress enacted Section 216(c) in order to provide employers with an efficient and expert *non-judicial* alternative for resolving FLSA liability.  Indeed, the Dissent notes that Section 216(c) was enacted in response to a new reluctance among employers to voluntarily remit back pay in cooperation with the DOL without a need for court proceedings.  *See* Diss Op. at 11–12.  This reluctance was due to fears that DOL supervision was insufficient to protect employers from later suits in the aftermath of *Brooklyn Savings* and *Gangi.  See id.* (citing Fair Labor Standards Amendments of 1949, S. Rep. No. 81-640, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.C.C.A.N. 2241, 2248).  As noted above, Rule 68(a)'s filing and pleading requirements impose burdens on employers and employees looking to resolve FLSA disputes.  Voluntary and DOL-supervised settlements do

1  Congress' amendment authorizing the DOL to supervise private

2  FLSA settlements as prohibiting Rule 68(a) stipulated judgments

3  settling FLSA claims in the context of ongoing litigation when the

4  amendment does not pertain to judicial actions.[84]  Congress does not

5  "hide elephants in mouseholes."[85]

---

not impose these same (or equivalent) burdens.  Section 216(c) is thus fairly understood as a distinct provision which is nonetheless fully compatible with the goals of Rule 68 in encouraging efficient settlement of claims.

[84] Indeed, interpreting Congress' amendment adding § 216(c) in the way the Dissent does would seemingly prohibit *all* other forms of settling FLSA claims, including judicially-approved settlements, because Congress only authorized the DOL to settle FLSA claims.  Nonetheless, the Dissent, and to our knowledge, every circuit to address the issue, accepts that courts may approve FLSA settlements and dismissals—even if there is disagreement as to whether such approval is *required*— despite the fact that § 216(c) only grants supervisory authority to the DOL.  The consistency of Rule 68 and the 1949 amendments is all the more evident considering that Rule 68 had been in existence for approximately ten years by the time § 216(c) was adopted.  *See Marek*, 473 U.S. at 8–9 (discussing the history of Rule 68 and noting that the rules were adopted in 1938).

[85] *See Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).  The Dissent also suggests that the Portal-to-Portal Act of 1947 reflects Congressional endorsement of its broad reading of *Brooklyn Savings* and *Gangi*.  Diss. Op. at 12 n.5.  However, the Dissent's discussion omits the express congressional disapproval of the Supreme Court's FLSA jurisprudence embodied in the Congressional Findings attached to the Portal-to-Portal Act.  *See* 29 U.S.C. § 251(a).  Those findings open with an express statement that "the Fair Labor Standards Act of 1938 . . . has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees" and warned that if these interpretations "were permitted to stand . . . the courts of the country would be burdened with excessive and needless litigation . . ."  *Id.*  This language echoed that of Justice Jackson, citing to *Brooklyn Savings* and *Gangi* and writing in the same year as the Portal-to-Portal Act, that the Court's FLSA jurisprudence had caused "interminable litigation[]stimulated by a contingent reward to attorneys."  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 155 (1947) (Jackson, *J.*, concurring).  Taken together, this language suggests that Congress was more concerned with protecting employers from the excessive litigation caused by the Supreme Court's FLSA jurisprudence than with restricting the means by which parties could settle.  In line with these contemporary views of *Brooklyn Savings* and *Gangi*, we decline to use the "rubric of 'unequal bargaining power'" to "promulgate social values"

In light of the unambiguously mandatory command of Rule 68(a) for the clerk of the court to enter offers of judgment when they are accepted, and because we find no indication by Congress or the Supreme Court that the FLSA requires judicial approval of stipulated judgments concerning FLSA claims in the context of ongoing litigation, we decline to pull such a requirement out of thin air with respect to Rule 68(a) offers of judgment settling FLSA claims. Neither amici nor the Dissent has identified a reliable source in the statutory history that demonstrates "the necessary clear expression of congressional intent required to exempt the statute from the operation of Rule 68."[86]

### c.  *Cheeks v. Freeport Pancake House, Inc.*

Amici also contend that a prior decision from our circuit— *Cheeks v. Freeport Pancake House, Inc.*—is determinative of whether Rule 68(a) offers of judgment involving FLSA claims must be approved by a court before they may be entered.  While we acknowledge the similarities between the two cases, we decline to extend *Cheeks*'s holding requiring judicial approval for stipulated dismissals settling FLSA claims with prejudice under Rule 41(a)(1)(A)(ii) to the context of Rule 68(a) offers of judgment.

The question in *Cheeks* was whether parties could enter a "stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or DOL, that may be enforceable," pursuant to Rule 41(a)(1)(A)(ii).[87]  Rule 41(a)(1)(A)(ii) states that "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and *any applicable federal*

---

which "intrude upon the legislative sphere" and "reflect imprecise apprehensions of economics and desirable public policy."  *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 861 (5th Cir. 1975); *see also id.* at 162.

[86] *Marek*, 473 U.S. at 11–12 (internal quotation marks and modifications omitted).

[87] *Cheeks*, 796 F.3d at 204.

*statute*, the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."[88]    *Cheeks* thus turned on whether the FLSA was an "applicable federal statute," without narrowing that reference to the text of the statute, such that court approval was necessary before FLSA claims could be dismissed with prejudice by stipulation of the parties.[89]    The *Cheeks* Court concluded that the FLSA met the "applicable federal statute" exception to Rule 41(a)(1)(A)(ii) because of "the unique policy considerations underlying the FLSA" and the "underlying purpose" of the Act.[90]    Therefore, it held that stipulated dismissals settling FLSA claims with prejudice pursuant to Rule 41(a)(1)(A)(ii) require approval of either the district court or the DOL to take effect.[91]

The holding in *Cheeks* was limited to Rule 41(a)(1)(A)(ii) dismissals with prejudice.  The court did not consider "whether parties may settle such cases without court approval or DOL supervision by entering into a Rule 41(a)(1)(A) stipulation *without* prejudice."  Nor did it address other avenues for dismissal or settlement of claims, including Rule 68(a) offers of judgment.[92]  The district court and amici concede that "the question addressed in *Cheeks* was limited to Rule [41(a)(1)(A)(ii)] stipulations dismissing FLSA claims with prejudice."[93]  Thus, while *Cheeks* may provide some support for the proposition that Rule 68(a) offers of judgment also

---

[88] Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added).

[89] *Cheeks,* 796 F.3d at 204.

[90] *Id.* at 206.

[91] *Id.*

[92] *Id.* at 201 n.2.

[93] Sec'y of Labor Br. at 28; *see also Hasaki Rest., Inc.,* 319 F.R.D. at 116 ("*Cheeks* may not apply *a fortiori* to a Rule 68 FLSA settlement given its reliance on the language of Rule 41 . . . .").

require judicial approval, it is not directly controlling, and we are not required to adopt its reasoning.[94]

For the reasons discussed in the preceding section for our conclusion, that the FLSA does not require judicial approval of Rule 68(a) offers of judgment, we decline to extend *Cheeks*' judicial approval requirement to that context.  Moreover, we do not believe that all of the reasons supporting the decision in *Cheeks* comfortably apply in the Rule 68(a) context.  For one, Rule 41(a)(1)(A) contains an explicit command that judicial approval of a stipulated dismissal is necessary if a federal statute so requires, but as discussed, Rule 68(a) does not contain a similar, explicit exception.  Also, the *Cheeks* opinion expressed concern that Rule 41(a)(1)(A)(ii) stipulated dismissals are not filed publicly on the docket, and therefore, are akin to the private, secret settlements and waivers of an employee's FLSA rights that the Supreme Court refused to enforce in *Brooklyn Savings* and *Gangi*.[95] Rule 68(a) avoids any secret settlement problem because offers of judgment are publicly filed on the court's docket, as required by the Rule.[96]

Nor are we alone in confining *Cheeks* to Rule 41(a)(1)(A)(ii) stipulated dismissals with prejudice; the majority of district court judges to consider the issue in our circuit have also held that *Cheeks* should not be extended to apply to Rule 68(a) offers of judgment.[97]

---

[94] *See generally,* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1259 (2006) ("Stare Decisis requires a court to adhere only to its decisions—its holdings—not to any utterance the court may make.").

[95] *Cheeks,* 796 F.3d at 201 (describing the issue as "whether judicial approval of, *and public access to,* FLSA settlements is required" (emphasis added)).

[96] *See* Fed. R. Civ. P. 68(a) (requiring the parties to file the offer and notice of acceptance, plus proof of service, with the district court before the clerk can enter the judgment).

[97] *See Anwar v. Stephens,* No. 15-CV-4493 (JS) (GRB), 2017 WL 455416, at *1 (E.D.N.Y. Feb. 2, 2017) ("The majority of district courts in this Circuit have held that judicial

Accordingly, we decline to extend *Cheeks'* holding.

### d.  The FLSA as a Uniquely Protective Statute

Finally, the district court and amici refer to the FLSA's "unique features and policies," or the Act's "remedial and humanitarian goals" as justification for requiring judicial approval of Rule 68(a) offers of judgment settling FLSA claims and it is not difficult to view the Dissent as similarly motivated.  We take issue with this line of reasoning for various reasons.

"Congressional intent is discerned primarily from the statutory text."[98]  Appeals to broad remedial goals and congressional purpose are not a substitute for the actual text of the statute when it is clear.[99] In accordance with the Constitution's separation of powers, courts are charged with interpreting the actual text of the laws Congress enacts, and not with rewriting or expanding the scope of the laws in the absence of statutory text, no matter how much one may think it may advance purported remedial goals or represent congressional intent.[100]  Indeed, the Supreme Court very recently emphasized the

---

approval is not required for Rule 68 offers of judgment . . . . This Court concurs with the majority and declines to ignore the mandatory language of Rule 68." (internal quotation marks omitted)).

[98] *CTS Corp. v. Waldburger,* 573 U.S. 1, 12 (2014).

[99] *See Magwood v. Patterson,* 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent."); *cf. C.I.R. v. Asphalt Prods. Co., Inc.,* 482 U.S. 117, 121 (1987) ("Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided.").

[100] *See Baker Botts L.L.P. v. ASARCO LLC,* 135 S. Ct. 2158, 2169 (2015) ("Our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." (internal quotation marks omitted)); *see also Henson,* 137 S. Ct. at 1725 ("[W]hile it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced.").

importance of giving the FLSA nothing more than a "fair reading" when it rejected the argument that the FLSA's *statutory* exceptions should be narrowly-construed and characterized the premise that "the FLSA pursues its remedial purpose at all costs" as "flawed."[101]

While interpreting the FLSA to require judicial approval of Rule 68(a) offers of judgment settling FLSA claims might be consistent with some of the policy goals of Congress when it enacted the FLSA in 1938, we also agree with Hasaki that the Congressional policy of timely entry of judgment upon acceptance of a Rule 68(a) offer would be frustrated by a judicial approval requirement. Moreover, the fact that a Rule 68(a) stipulated judgment must be entered by the clerk of the court does not mean that the judgment cannot later be challenged as deficient under the common law of contract[102] or under Rule 60(b) for fraud, misrepresentation, misconduct, or "any other reason that justifies relief."[103] In any event, we do not see our role as weighing these policy considerations and determining which policy to prioritize when the statute is unambiguous. That is the job of Congress.[104]

Moreover, the fact that a judicial approval requirement might further the broad, remedial policy goals of the FLSA does not necessarily mean that Congress would have enacted such a

---

[101] *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

[102] *See Goodheart Clothing v. Laura Goodman Ent.*, 962 F.2d 268, 272 (2d Cir. 1992) (offers of judgment are contracts treated according to ordinary contract principles).

[103] Fed. R. Civ. P. 60(b).

[104] *See Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) ("[N]o legislation pursues its purpose at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.").

requirement if it had considered the question, for "it is quite mistaken to assume, as [amici] would have us, that 'whatever' might appear to 'further the statute's primary objective must be the law.'"[105] Were that the case, we would be a short step away from requiring judicial approval of a variety of settlements that involve vulnerable citizens, such as discrimination suits under Title VII of the Civil Rights Act and § 1983 claims of serious police misconduct.[106]

With respect, the Dissent also disregards the costs imposed by the requirement that it would read into FLSA and thus into Rule 68. A frequently cited district court case in this Circuit on the conduct of fairness reviews cites no fewer than nine factors (as well as the well-worn "totality of the circumstances" standard) to guide the fairness inquiry. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012) (listing such factors as "the presence of other employees situated similarly to the claimant," the "likelihood that the claimant's circumstance will recur," and "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"). But information regarding these factors may be unavailable in the early stages of litigation during which many Rule 68 offers occur. Often there will not even be basic information concerning the claimed hours worked or rate of pay, leaving courts ill-equipped to conduct a fairness review. *Cf. Mamani v. Licetti*, No. 13-CV-7002 (KMW)(JCF), 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) (finding insufficient information to adjudicate the fairness of a proposed FLSA settlement where the parties failed to provide their estimate of the hours worked or the applicable wage). The reviewing court may thus be required to order the parties to come forward with more information, expending time and resources, and unnecessarily

---

[105] *Henson*, 137 S. Ct. at 1725 (brackets omitted) (quoting *Rodriguez*, 480 U.S. at 526).
[106] *See* Appellant's Br. at 18–19.

increasing attorney's fees.  *See Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013) (noting that "the vast majority of FLSA cases" involve claims that "are simply too small, and the employer's finances too marginal, to have the parties take further action if the Court is not satisfied with the settlement"), *abrogated by Cheeks*, 796 F.3d 199 (2d Cir. 2015).  And this means delay.  As represented at oral argument, a fairness hearing could impose a delay of more than six months on the recovery due to plaintiffs.

We do not dwell here on policy considerations given that it is not possible on this record to perform a cost–benefit analysis as to the requirement of fairness hearings in Rule 68 settlements of the thousands of FLSA cases filed in this Circuit each year.  And even if such an analysis were possible, that is not our job.  As the Dissent would have it, this court should insert a paternalistic judicial fairness proceeding into Rule 68(a) settlements of FLSA claims that Congress does not require and the parties, represented by counsel, do not want.  Our holding to the contrary, and our reasoning supporting it, is dismissed as "simplistic" by the Dissent, to which our answer is that there are frequently times when "less is more,"[107] and this is one of them.  Congress knows how to require judicial approval of settlements and dismissals when it wants to.[108]  Appeals to the broad remedial goals and uniquely protective qualities of the FLSA do not authorize us to write a judicial approval requirement into the FLSA, and thereby into Rule 68(a), when the text of both provisions is silent as to such a requirement.

---

[107] *See generally* Phillip C. Johnson, *Miles van der Rohe* 49 (1947) (ascribing the phrase "less is more" to the minimalist architect, Miles van der Rohe).

[108] *See supra* Section I.

## CONCLUSION

We have considered amici's other arguments and find them to be without merit. [109]  For the reasons we have stated, we hold that judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims.  We therefore REVERSE and VACATE the district court's order to the contrary and REMAND to the district court with instructions that the Clerk of the Court enter the judgment as stipulated in the parties' accepted Rule 68(a) offer.

---

[109] Appointed amicus also makes the argument that because Rule 68(a) offers of judgment are "contracts to be interpreted according to ordinary contract principles," *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 31 (2d Cir. 2016), and because "employees cannot waive their rights under the FLSA, they cannot validly accept offers to settle their claims unless the offers are approved by the court or DOL," PCLG Br. at 21–22.  This argument confuses the concepts of capacity to enter a contract with enforceability of a contract.  In *Brooklyn Savings* and *Gangi*, the Supreme Court described the question as whether waivers and releases of FLSA liability were enforceable as an affirmative defense for liquidated damages.  At no time did the Court discuss, or did the parties argue, that the employees' agreements to waive or release their rights to liquidated damages under FLSA were invalid for lack of contractual capacity.  Indeed, if employees had no contractual capacity to settle or dismiss their FLSA claims, then there would have been no need for the Court to expressly reserve the question of whether an employee's release of his right to liquidated damages as part of a bona fide settlement of a bona fide dispute over the number of hours worked or the regular rate of pay would be enforceable.  *See Gangi,* 328 U.S. at 114–15.

1    CALABRESI, *Circuit Judge*, dissenting:

2        This is a simple case of statutory misinterpretation. I believe the
3    majority misreads the language, the history, and the design of the Fair
4    Labor Standards Act ("FLSA"). It also ignores the longstanding
5    position of the Supreme Court of the United States, the Department
6    of Labor, and seven Courts of Appeals—including our own. I
7    therefore respectfully, but strongly, dissent.

8                                    **INTRODUCTION**

9        The Plaintiff in this case alleged, on behalf of himself and all
10    other similarly situated employees, that Defendants-Appellants failed
11    to pay him overtime in violation of the FLSA. *See* 29 U.S.C. § 207(a).
12    The FLSA states that any employer who commits such a violation
13    "shall be liable to the employee or employees affected in the amount
14    of . . . their unpaid overtime compensation . . . and in an additional
15    equal amount as liquidated damages." *Id.* § 216(b). The statute in its
16    terms provides two, and only two, methods for resolving such
17    liability:

18        1.    "An action to recover the liability prescribed in the preceding
19              sentence[] may be maintained against any employer . . . in any
20              Federal or State court of competent jurisdiction" by the
21              employee(s) or by the Secretary of Labor. *Id.* § 216(b)-(c); or

22        2.    The Secretary of Labor "is authorized to supervise the payment
23              of the . . . unpaid overtime compensation owing to any
24              employee," and "the agreement of any employee to accept such
25              payment shall upon payment in full constitute a waiver by such

1    employee of any right he may have ... to such ... unpaid
2    overtime compensation and an additional equal amount as
3    liquidated damages." *Id.* § 216(c).

4    The majority, however, finds a third, implied method of
5    resolving such claims of FLSA overtime liability: a private Rule 68(a)
6    settlement agreement negotiated only by the employer and employee,
7    without oversight by any third party. *See* Fed. R. Civ. P. 68(a).

8    The reasoning of the majority is easily enough stated. Rule
9    68(a), as written, makes settlement agreements under that rule
10   mandatorily applicable. And the majority asserts that, if that meant
11   that no Rule 68(a) settlements could be challenged and all were
12   untouchable, that would be the end of this case. But, as the majority
13   is willing to accept for its analysis, Rule 68(a)'s seemingly absolute
14   language is not in fact absolute. Rather, it allows exceptions where a
15   settlement violates another statute or rule. *See* Maj. Op. 9-10; *see also*
16   *Gordon v. Gouline*, 81 F.3d 235 (D.C. Cir. 1996); *White v. Alabama*, 74
17   F.3d 1058 (11th Cir. 1996); *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir.
18   1994); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); 31 U.S.C. §
19   3730(b)(1); N.Y. C.P.L.R. §§ 1207, 1208. In such instances, the Rule
20   68(a) settlement yields to the other statute or rule.

21   The majority does not, however, read subsection 216(c) of the
22   FLSA as superseding Rule 68(a)'s mandatory language. It reaches this
23   conclusion because it fails to find in subsection 216(c) an express
24   "textual requirement for judicial approval." Maj. Op. 13; *see also id.* at
25   12, 17-20.

1    But this is an incorrect reading of both subsection 216(c) and
2    the FLSA as a whole. In fact, subsection 216(c) amounts to such a
3    command, though no robotic words to that effect are used. And the
4    FLSA, as a whole, prohibits the kind of unsupervised private
5    settlement agreements that the application of Rule 68(a) to FLSA
6    claims would bring about. Thus, the FLSA contains just the kind of
7    "clear expression of congressional intent" that the majority seems to
8    require. Maj. Op. 11, 18 (selectively quoting *Marek v. Chesny*, 473 U.S.
9    1, 11-12 (1985)).[1] It therefore supersedes Rule 68(a)'s mandatory
10   language.

11   The bulk of the majority opinion is spent seeking to distinguish
12   cases that run against it. It repeatedly tries to explain why—though
13   those cases are obviously in tension with the majority's result—the
14   majority is not absolutely bound by them. And so distinctions without
15   differences are, again and again, propounded, as are occasional
16   distinctions with only slight differences.

17   Yet, in the end, the majority always returns to its one simple
18   and simplistic argument: Rule 68(a) settlements are mandatory and

---

[1] Actually, the requirement in *Marek* is not as strict as the majority makes it out
to be. For *Marek* says both that a "clear expression of congressional intent" is
needed for a statute to supersede a federal rule of procedure, and that the test
is whether "applying Rule 68 in the context of [the statute] is consistent with
the policies and objectives of [the statute]." 473 U.S. at 11. The Court in *Marek*
does not clarify the relationship between these two (potentially) different
standards. Nevertheless, even assuming *Marek* requires just what the majority
says, subsection 216(c) and the FLSA as a whole easily satisfy that standard.

subject to no controls, unless a statute precludes such absolute applicability, and the FLSA has no words precisely to that effect. Reading the FLSA to permit such settlements, however, violates all rules of statutory interpretation, the decisions of all relevant courts, and common sense as well. The FLSA, in fact, is paradigmatically a statute that prohibits unsupervised private settlement agreements, including those made under Rule 68(a).

## I.  The Meaning of Subsection 216(c) of the FLSA

The majority says that its reading of subsection 216(c) of the FLSA as not superseding Rule 68(a) is "unambiguous." Maj. Op. 13. This is a most unusual use of the term. Normally, "unambiguous" goes to the plain meaning of words. Here, the majority applies it to what it considers to be the absence of words. And the majority does this for a simple reason: it believes that, if the absence of words can be deemed unambiguous, then they can disregard all "other tools of statutory interpretation." *Id*. at 21. But, in fact, the FLSA does not "unambiguously" state what the majority claims—quite the opposite. It *manifestly* requires the rejection of the majority's approach. The majority's reading of the FLSA violates at least three rules of statutory interpretation.

### A.  The Whole Act Rule

First, in its reading of subsection 216(c), the majority fails to consider the statute as a whole, which makes clear that subsection 216(c)—the provision that carves out a specific set of supervised settlement agreements as valid under the FLSA—prohibits

4

unsupervised private settlement agreements. It is, of course, a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)). In particular, "[i]n determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* at 132; *see also Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 98-100 (2d Cir. 2009) (per curiam).

Even a cursory review of the FLSA reveals several provisions that indicate that subsection 216(c) limits the mechanisms by which employers and employees can settle FLSA wage/hour claims. *First*, the statute sets a mandatory floor for wages (and a mandatory ceiling for standard workweek hours) for virtually all employees in the United States. *See* 29 U.S.C. §§ 206, 207. *Second*, the statute makes it a federal crime for an employer willfully to violate those wage requirements. *See id.* § 215(a)(2). *Third*, the statute gives district courts the authority to issue injunctions against employers who "withhold[ ] payment of minimum wages or overtime compensation found by the court to be due to employees." *Id.* § 217. *Fourth*, in the event that an employer violates the wage requirements, the statute *specifically* defines the damages for which employers "*shall* be liable to the employee" to be the full amount of their unpaid wages and "an

1  additional equal amount as liquidated damages." *Id.* § 216(b)
2  (emphasis added).

3      These statutory requirements set minimum levels of wages that
4  must be given to employees. They also establish the minimum that an
5  employer who violated these requirements is obligated to pay. *They*
6  *are mandatory*. As such, they represent a clear expression of
7  congressional intent to prohibit private settlements that go below the
8  statutory mandates.

9      Subsection 216(c) permits settlement agreements that are
10 supervised by the Department of Labor (and, as we shall see *infra*,
11 courts) because such supervision assures that the core statutory
12 obligations will be met. Rule 68(a) settlement agreements, instead,
13 privately determine what the employer must pay, regardless of the
14 statutory requirements. Therefore, the majority's conclusion that
15 subsection 216(c) allows unsupervised Rule 68(a) private settlements
16 is in obvious conflict with the text of the statute as a whole.

17      **B.  Statutory Language Should Not Be Rendered Superfluous or**
18          **Meaningless**

19      Second, the majority overlooks the fact that its reading makes
20 the existence of subsection 216(c) meaningless. It is a basic principle
21 of statutory interpretation that, where Congress "explicitly
22 enumerates certain exceptions" within a statute, "additional
23 exceptions are not to be implied, in the absence of evidence of a
24 contrary legislative intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28
25 (2001) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17

(1980)). That is especially true where the additional exception "would not merely supplement the explicit exception," but "would in practical effect render that exception entirely superfluous." *Id.* at 29.

Here, subsection 216(c) says that private settlement agreements resolving FLSA wage/hour liability constitute valid waivers of FLSA plaintiffs' claims *when they are supervised by the Secretary of Labor*. But subsection 216(c) is rendered superfluous by the majority's interpretation. Why specify that settlements supervised by the Labor Secretary are valid if, as the majority maintains, private settlement agreements—such as those under Rule 68(a)—are *always* allowed under the statute? *Cf., e.g., Jacobs*, 577 F.3d at 100 (observing that, when "Congress singled out specific non-profits" to be deemed subject to the FLSA's requirements, it implicitly excluded all other non-profits).

### C. The Statutory History

Third, and perhaps most important, the majority ignores completely the significance of the statutory history of subsection 216(c). The majority repeatedly argues that "extrinsic evidence" and *legislative* history should not be consulted unless a statute is ambiguous. *See* Maj. Op. 20-21 & n.75. Putting aside the fact that the FLSA certainly does not unambiguously permit the majority's result, the majority confuses legislative history for statutory history. In doing that, it takes the unprecedented position that statutory history is irrelevant in understanding the meaning of a statute.

It is true that the Supreme Court has said that legislative history generally does not come into play when the statute is unambiguous. *See, e.g., Matal v. Tam*, 137 S. Ct. 1744, 1756 (2017). But no such rule applies to statutory history. *See, e.g., BNSF Ry. Co. v. Loos*, 139 S. Ct. 893, 906 (2019) (Gorsuch, J., dissenting) ("To be clear, the statutory history I have in mind here isn't the sort of unenacted legislative history that often is neither truly legislative . . . nor truly historical . . . . Instead, I mean here the record of *enacted* changes Congress made to the relevant statutory text over time, the sort of textual evidence everyone agrees can sometimes shed light on meaning.").

Statutory history—especially of the kind delineating changes made to the statute by Congress in response to decisions by the federal courts—is relevant regardless of whether the statute is ambiguous, and, indeed, is commonplace in the opinions of the High Court. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693-96 (2014); *Hinck v. United States*, 550 U.S. 501, 503-07 (2007); *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). Statutory history is not a kind of "extrinsic evidence" as the majority suggests. Maj. Op. 20-22. It is an accepted and uncontroversial tool in the interpretation of statutory texts. *See, e.g.*, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256 (2012) ("If the legislature amends or reenacts a provision other than by way of a consolidating statute or restyling project, a significant change in language is presumed to entail a change in meaning.").

The statutory history of subsection 216(c) of the FLSA makes crystal clear that, as the text of the statute itself indicates, the FLSA

does not, as a general matter, allow unsupervised private settlement of wage/hour claims.

The original FLSA did not contain subsection 216(c). *See* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (1938). Not surprisingly, almost immediately, some employers sought to resolve their statutory liability for FLSA wage/hour claims through private settlement agreements negotiated between the employer and employee. In most such cases, the employer remitted to the employees some portion of their unpaid backpay; the employees then signed a contract waiving their rights to bring suit to recover any additional unpaid backpay and/or liquidated damages owed under the statute.[2]

The Supreme Court, in a pair of cases—*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)—held that, despite the lack of any specific prohibiting language, the FLSA banned almost all such settlements. Thus, in *Brooklyn Savings Bank*, the Court held that private settlement agreements in which the employer pays the employee less than the employer's statutory liability (in the amount of unpaid backpay and/or liquidated damages) in return for the employee's waiver of their rights violated the FLSA. 324 U.S. at 707-09 (liquidated damages); *id.* at 713-14 (backpay). Then, in *Gangi*, the Court extended

---

[2] The lower courts that then addressed the issue almost uniformly held that the private agreements violated the FLSA. *See Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 708 n.21 (1945) (collecting cases from the lower courts).

1 *Brooklyn Savings Bank*, and held that such agreements are invalid even
2 if they are entered into for the purpose of settling a bona fide dispute
3 as to whether the employer is covered under the FLSA. 328 U.S. at
4 114.

5 The Court did leave open the possibility that some limited
6 private settlement agreements involving FLSA wage/hour claims
7 might be acceptable.

8 *First*, in *Gangi*, the Court observed in dicta that settlement
9 agreements arrived at through stipulated judgments may be valid
10 because "the requirement of pleading the issues and submitting the
11 judgment to judicial scrutiny may differentiate stipulated judgments
12 from compromises by the parties." 328 U.S. at 114 n.8. In other words,
13 *it indicated that court-supervised settlements might be valid under the*
14 *FLSA.*[3]

15 *Second*, in both *Brooklyn Savings Bank* and *Gangi*, the Court—
16 because the issue was not squarely presented—declined to address
17 whether private settlement agreements might be valid when they are

--------

[3] In Footnote 8, the *Gangi* Court was reacting to the petitioner's argument that private compromises between the parties are permitted under the FLSA in light of *North Shore Corporation v. Barnett*, 323 U.S. 679 (1944). But, as explained *infra* at 15-16, *North Shore Corp.* involved a stipulated judgment filed with the Supreme Court for its review and thus, as *Gangi* noted, subjected to "judicial scrutiny." It was this difference between judicially scrutinized and private settlements that the Court in *Gangi* wanted to emphasize.

the product of bona fide disputes as to the number of hours worked or the regular rate of employment. 324 U.S. at 714; 328 U.S. at 114-15.[4]

But apart from these two possibilities—neither of which are relied on by the majority in the instant case—the Court made clear that the FLSA did not permit private settlements.[5]

The breadth of these holdings created problems for the Department of Labor. The Department had adopted a policy of encouraging employers to make voluntary restitution of unpaid backpay to their employees in cases where litigation seemed unnecessary. Fair Labor Standards Amendments of 1949, S. Rep. No. 81-640, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.C.C.A.N. 2241, 2248. But employers declined to cooperate with the Department of Labor. They feared that, despite the Department of Labor's supervision, such

---

[4] In doing so, the Court was leaving open the possibility that bona fide disputes as to the number of hours worked or the regular rate of employment were valid under the FLSA, as some lower courts had concluded. *See Gangi*, 328 U.S. at 115 n.10 (citing *Strand v. Garden Valley Telephone Co.*, 51 F. Supp. 898, 904-05 (D. Minn. 1943) (characterizing such bona fide disputes as "fact" disputes as opposed to "legal" ones and therefore potentially subject to compromise)).

[5] Defendants-Appellants alleged at oral argument that their case involves a bona fide factual dispute. But they do not point to any evidence in the record to support that allegation, nor is it ascertainable from the face of their Rule 68(a) settlement agreement. Court supervision of the proposed settlement is, of course, what the District Court judgment, that the majority reverses today, ordered.

settlements were not valid under *Brooklyn Savings Bank* and *Gangi*. *Id.* at 2249.

To solve this problem, the Secretary of Labor requested, in testimony before the Senate, that the Department of Labor be given the power to supervise the private settlement of FLSA wage/hour claims, with such supervised settlements fully resolving the employer's statutory liability. *Id.* at 2247-48. And that is precisely what happened: in 1949, Congress amended the FLSA, inserting subsection 216(c). *See* Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, 63 Stat. 910, 919 (1949). In other words, Congress, at the request of the Department of Labor, added "Department of Labor-supervised settlements" to "court-supervised settlements" as exceptions to the FLSA's general prohibition against private settlement agreements.

Two things are clear from this statutory history. *First*, Congress was fully aware that the FLSA was being interpreted to prohibit private settlements of FLSA wage/hour claims. *Second*, in response to this interpretation, Congress, far from overturning *Brooklyn Savings Bank* and *Gangi* or otherwise authorizing private settlements more

1    generally, amended the FLSA to allow such settlements *if and when*
2    *they were supervised* by the Department of Labor.[6]

---

[6] Congress' approval of the Supreme Court's interpretation of the FLSA in *Brooklyn Savings Bank* and *Gangi* can also be seen in its passage of the Portal-to-Portal Act of 1947. Congress inserted a provision into that Act which amended the FLSA to permit private settlements of FLSA wage/hour claims for causes of action which accrued prior to May 14, 1947. *See* Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, 86 (codified at 29 U.S.C. § 253 (enacted May 14, 1947)). But Congress limited such settlements to those involving "a bona fide dispute as to the amount payable by the employer." 29 U.S.C. § 253(a). Congress also prohibited such settlements from "be[ing] so compromised to the extent that such compromise is based on an hourly wage rate less than the minimum required under [the FLSA], or on a payment for overtime at a rate less than one and one-half times such minimum hourly wage rate." *Id.* In essence, then, Congress confirmed the existence of the bona fide dispute exception that the Supreme Court had left open in *Brooklyn Savings Bank* and *Gangi*, but only for those FLSA wage/hour claims that had accrued prior to May 14, 1947.

To the extent the majority claims that the Portal-to-Portal Act signals Congress's *disapproval* of the Supreme Court's decisions in *Brooklyn Savings Bank* and *Gangi*, the majority patently ignores the text of that statute. Through the Portal-to-Portal Act, Congress was simply abrogating three Supreme Court decisions that made employers liable for their employees' "portal-to-portal" activities, such as time spent walking on the employer's premises from the time clock to the work bench. *See Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161 (1945); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). "Many employers . . . did not have a custom or practice of paying their employees for such preliminary activities. Consequently, they faced a flood of FLSA suits." *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 217 (4th Cir. 2009). This specific line of Supreme Court decisions—and manifestly not the core FLSA jurisprudence that required supervision of settlements—is what occasioned "the express congressional disapproval" that the majority cites. Maj.

13

Thus, as interpreted by the Supreme Court in *Brooklyn Savings Bank* and *Gangi*, and as amended by Congress in 1949, subsection 216(c) of the FLSA prohibits private settlements as a general matter, and—at most—allows three forms of settlement agreements: (1) a settlement supervised by the Department of Labor; (2) a settlement subjected to judicial scrutiny; and (3) perhaps, a settlement negotiated pursuant to a bona fide dispute as to hours worked or the rate of employment.[7]

Significantly, and unlike the settlements permitted by the High Court and Congress, Rule 68 settlements are entirely at the will of private parties and subject to none of the above-mentioned validity controls. It follows that the majority's position permitting uncontrolled Rule 68 settlements flies in the face of the FLSA, and thus cannot be correct.

---

Op. 24 n.84. *See also Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 96 (2d Cir. 1953) (L. Hand, J., concurring) (quoting the critical congressional language on which the majority relies and explaining how it refers to *Tenneseee Coal, Jewell Ridge,* and *Mt. Clemens*).

[7] As mentioned earlier, this third exception is not relevant to the instant case. Our Circuit has since said that FLSA claims are arbitrable. *See Rodriguez-Depena v. Parts Authority, Inc.*, 877 F.3d 122 (2d Cir. 2017). But that is because the kind of third-party supervision that arbitration affords was deemed to be sufficiently similar to court (or Department of Labor) approval to be valid under the FLSA. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

1    II.        **The Universal Understanding of the FLSA's Requirements**

2           Quite apart from the majority's incorrect understanding of the
3    text and statutory history of subsection 216(c) specifically, the
4    majority's holding today, in its reading of the FLSA, goes against
5    Supreme Court precedent, the decisions of six Courts of Appeals, the
6    longstanding position of the Department of Labor, and our own
7    Court's case law.

8           *A.  The Supreme Court*

9           The Supreme Court has, again and again, read the FLSA to
10   prohibit private settlement agreements. *See, e.g., Brooklyn Savs. Bank,*
11   324 U.S. at 706-07; *Gangi,* 328 U.S. at 116; *Barrentine v. Arkansas-Best*
12   *Freight System, Inc.,* 450 U.S. 728, 740 (1981); *Tony & Susan Alamo*
13   *Found. v. Sec'y of Labor,* 471 U.S. 290, 302 (1985); *United States v.*
14   *Mezzanatto,* 513 U.S. 196, 206 n.4 (1995).

15          The majority attempts to distinguish these cases as not directly
16   addressing the question at issue here. *See* Maj. Op. 13-20. It is true that
17   none of these cases involve the application of Rule 68(a) to FLSA
18   claims. But that does not mean that these cases—Supreme Court
19   decisions interpreting the design of the FLSA and its relationship to
20   private settlement agreements—are not directly relevant to our case.
21   For they all say that, as a general rule, FLSA wage/hour claims cannot
22   be resolved through private settlement agreements (which Rule 68(a)
23   settlements manifestly are). In other words, the distinctions the
24   majority makes are typically distinctions that make no difference to
25   the issue before us.

1    Perhaps unconfortable with the distinctions it makes, the
2    majority tries to shield its unprecedented ruling by a
3    mischaracterization of a one-paragraph summary order of the
4    Supreme Court. *See* Maj. Op. 18 & n.63 (discussing *North Shore Corp.*
5    *v. Barnett*, 323 U.S. 679 (1944)). Despite what the majority suggests,
6    there is no indication whatever that the Supreme Court ordered the
7    lower court in that case to enter a stipulated judgment without
8    "reviewing the [parties'] stipulation for fairness*."* Quite the contrary.
9    For the Supreme Court reviewed the dispute in *North Shore Corp.*
10   twice—as the Fifth Circuit and the district court had previously done.[8]
11   The stipulated judgment was submitted to the Court in the form of a
12   joint motion, which the justices certainly reviewed before putting to
13   one side the quite separate issue on which they had granted certiorari.
14   It is because of this procedural history—which details extensive

---

[8]  *Overstreet v. N. Shore Corp.*, 43 F. Supp. 445 (S.D. Fla. 1941) (granting motion to
dismiss on claim that toll road employees are engaged in interstate commerce
and thus entitled to alleged unpaid minimum wages and overtime under the
FLSA), *aff'd*, 128 F.2d 450 (5th Cir. 1942), *rev'd*, 318 U.S. 125, 129–30 (1943) ("If
[roads and bridges] are used by persons and goods passing between the various
States, they are instrumentalities of interstate commerce. Those persons who
are engaged in maintaining and repairing such facilities should be considered
as 'engaged in commerce' . . ." (internal citation omitted)); *see also Overstreet v.
N. Shore Corp.*, 52 F. Supp. 503 (S.D. Fla. 1943) (after a bench trial, holding that
the employees are entitled to compensation under the FLSA for the full time
they worked and awarding specific unpaid wages, overtime compensation,
penalties, and attorney's fees), *aff'd sub nom.*, *N. Shore Corp. v. Barnett*, 143 F.2d
172 (5th Cir. 1944) (affirming on the grounds that the time spent by the toll
collectors and ticket sellers in exempt activity and in non-exempt activity
cannot be segregated), *cert. granted*, 323 U.S. 691, *vacated and modified on
stipulations*, 323 U.S. 679 (1944).

"judicial scrutiny" over the course of six distinct proceedings—that *Gangi* cited *North Shore Corp.* as *an example of a stipulated judgment subjected to judicial scrutiny* and thus permissible under the FLSA. *Gangi*, 328 U.S. at 113.

Finally, perhaps because of the weakness of their attempts to distinguish the relevant Supreme Court authorities, the majority may be trying to avoid the Supreme Court's precedents in an additional way. It is a way, however, that cannot be correct. The majority may be implying that the holdings of the two leading High Court cases—*Brooklyn Savings Bank* and *Gangi*—are doubtful because the cases were decided "seven decades" ago. Maj. Op. 16. Insofar as the majority is suggesting that the Supreme Court, if presented with the issue today, would reach a different conclusion, this is always a possibility. But of course, unless and until that happens, we are bound by its decisions on the books. *See Agostini v. Felton*, 521 U.S. 203, 237-38 (1997). Whether we agree with them or not, the Supreme Court's precedents on the FLSA govern us. And they expressly tell us that the FLSA was passed in order to "prevent private contracts" between employers and their employees that, "due to the unequal bargaining power as between employer and employee," result in employees accepting substandard wages and excessive hours. *Brooklyn Savs. Bank*, 324 U.S. at 706; *see also* 29 U.S.C. § 202.

The Court in *Brooklyn Savings Bank* explained that the FLSA achieves this goal in two ways: at the front end, by setting mandatory, federal "standards of minimum wages and maximum hours," *Brooklyn Savs. Bank*, 324 U.S. at 707; and at the back end, by requiring

17

"that an employer who gambles on evading the Act will be liable for payment not only of the basic minimum originally due but also damages equal to the sum left unpaid." *Id.* at 709; *see also* 29 U.S.C. § 216(b). To allow "waiver" of either provision by private contract would, the Supreme Court emphasized, "nullify" the Act. *Brooklyn Savs. Bank*, 324 U.S. at 707.

The majority dismisses references to these readings of the FLSA as irrelevant appeals to public policy and to humanitarian goals. *See* Maj. Op. 28; *see also id.* at 28-30. But the majority misses the point: these are not abstract references to public policy considerations; they are binding explanations of how the FLSA works. As the Supreme Court said, the FLSA "forbids employee waiver of the minimum statutory rate because of inequality of bargaining power," and this same statutory principle "prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver of [statutory backpay or] liquidated damage is called for." *Brooklyn Savs. Bank*, 324 U.S. at 708; *see also Gangi*, 328 U.S. at 115-16. The FLSA's general prohibition against private settlement agreements is not an ideologically-based interpretation, but rather, according to the Supreme Court, an essential part of the design of the statute.

## B. The Other Circuits and the Department of Labor

The majority fails to mention entirely the decisions of six other Courts of Appeals and the longstanding position of the Department

18

of Labor, whose readings of the FLSA unequivocally run counter to the majority's position.

The Courts of Appeals have uniformly adopted the position that the FLSA prohibits private settlement of wage/hour claims as a general rule. That includes the Fourth Circuit, *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007), *superseded by regulation on other grounds as recognized in*, *Whiting v. Johns Hopkins Hosp.*, 416 F. App'x 312 (4th Cir. 2011); the Fifth Circuit, *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 161, 164-65 (5th Cir. 2015); the Sixth Circuit, *Boaz v. FedEx Customer Information Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013); *see also Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1041-42 (6th Cir. 1986) (en banc) (discussing the FLSA, *Brooklyn Savings Bank*, and *Gangi* at length)); the Seventh Circuit, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); the Eighth Circuit, *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); and the Eleventh Circuit, *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353-54 (11th Cir. 1982). The Ninth Circuit, in an unpublished opinion, has also endorsed the general rule prohibiting purely private settlement agreements. *See Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015).

Moreover, several district courts in those circuits that have not yet addressed the issue have also followed the general prohibition against private settlement of FLSA claims. *See, e.g.*, *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 524-29 (E.D. Pa. 2016) (following the general prohibition and citing additional district court cases in the Third

1 Circuit); *Sarceno v. Choi*, 66 F. Supp. 3d 157, 167-70 (D.D.C. 2014)

2 (doing the same for the D.C. Circuit).[9]

3    Likewise, the Department of Labor—in amicus briefs,

4 congressional testimony, and agency rulemakings—has regularly

5 maintained that FLSA wage/hour claims can be settled by private

6 agreements only if they are supervised by a court or by the

[9] The circuits differ among themselves only on what, if any, exceptions—not relevant to the instant case—may apply to that general prohibition. The Eleventh Circuit, for instance, has held that the bona fide dispute exception does *not* apply; that circuit maintains that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees"—those approved by a court and those supervised by the Department of Labor. *Lynn's Food*, 679 F.2d at 1352; *see also McBride v. Legacy Components, LLC*, -- F. App'x -- , No. 18-14105, 2019 WL 2538019, at *1 n.1 (11th Cir. June 20, 2019). Several circuits have cited approvingly to the Eleventh Circuit's rule. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015).

The Fifth Circuit, on the other hand, has held that the bona fide dispute exception *is* valid under the FLSA. *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 257 (5th Cir. 2012). But the circuit has confined that exception to circumstances where there has been sufficient "factual development of the number of unpaid overtime hours []or of compensation due for unpaid overtime" such that a court can be "assured . . . that the release resulted from a bona fide dispute." *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 161, 165 (5th Cir. 2015). Other circuits have signaled some agreement with the Fifth Circuit's approach. *See, e.g.*, *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026-27 (8th Cir. 2019) (leaving open the possibility that private settlement agreements resolving bona fide disputes may be valid under the FLSA).

Department of Labor. *See* Brief of Sec'y of Labor as Amicus Curiae In Support of the District Court's Decision at 19-20.[10] Significantly, it has consistently held this position for some forty years. *Id.*

The majority tries to ignore this "laundry list of courts and cases," Maj. Op. 19, by making a meaningless distinction between "private settlements" and "stipulated judgments." According to the majority, those cases are silent on the issue of stipulated judgments and "hold only that purely private settlements of FLSA claims, independent of any litigation, are prohibited without judicial approval or DOL supervision." *Id.* But even this meaningless difference is not in fact there, for the majority mischaracterizes those precedents. *See*, *e.g.*, *Lynn's Food*, 679 F.2d at 1353 ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment *after scrutinizing the settlement for fairness*.").

### C. Our Circuit's Precedent in **Cheeks**

Our Court in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), also said that FLSA claims generally cannot be settled through purely private agreements. And *Cheeks* cannot comfortably be reconciled with the majority's opinion today.

---

[10] The Department of Labor has taken the Eleventh Circuit position that no exception exists for bona fide disputes. Brief of Sec'y of Labor as Amicus Curiae In Support of the District Court's Decision at 19-20.

The question in *Cheeks* was "whether the FLSA is an 'applicable federal statute' within the meaning of Rule 41(a)(1)(A)[(ii)]." *Id.* at 204. Rule 41(a)(1)(A)(ii) governs voluntary, stipulated dismissals of actions in federal court. It states that, "[s]ubject to . . . any applicable federal statute," "[a] plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties." Fed. R. Civ. Pro. 41(a)(1)(A) & (A)(ii).

Our Court in *Cheeks* stated that "in light of the unique policy considerations underlying the FLSA," the FLSA falls "within Rule 41's 'applicable federal statute' exception." 796 F.3d at 206. We therefore held that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

The majority, correctly, notes that the *Cheeks* Court did not deal with Rule 68. But the *Cheeks* Court could not have prohibited the unsupervised Rule 41 stipulated dismissals without first answering in the negative the question of whether the FLSA—the "applicable federal statute"—generally allows private settlement agreements. And because that question is precisely the question that we are facing here, *Cheeks* inevitably decided the key issue presented in the instant case, and did so in the opposite way from the majority.

The majority's decision today holds that, while the FLSA does *not* allow purely private settlement agreements in the context of Rule 41(a)(1)(A)(ii) stipulated dismissals with prejudice, the FLSA *does* allow purely private settlement agreements in the context of Rule

68(a) judgments. I fail to see any support for that distinction in the text of the FLSA or anywhere else.

The majority seeks to locate the distinction within the Federal Rules. *See* Maj. Op. 22-23. But that attempt is unconvincing. The majority notes that Rule 41 contains language stating that plaintiffs may voluntarily dismiss their cases subject to "any applicable federal statute," while Rule 68 does not. But as the majority reluctantly recognizes, Rule 68 has, again and again, been interpreted to be subject to an analogous exception. *See, e.g.*, *Gordon v. Gouline*, 81 F.3d 235, 239-40 (D.C. Cir. 1996) (collecting cases); *see also* Maj. Op. 9-10. Moreover, if Rule 68 conflicts with the FLSA, then the FLSA—a statute—trumps Rule 68—a federal procedural rule—regardless of whether Rule 68 gives the statute the permission to do so. *See Marek v. Chesny*, 473 U.S. 1, 7-11 (1985) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 557-59 (1974) (the "proper test" for reconciling a federal statute and a Federal Rule is to determine "whether [applying the Rule] in a given context is consonant with the legislative scheme").

Significantly, the majority's ruling undermines *Cheeks* in one additional, important way. As the District Court in the instant case pointed out, if unsupervised Rule 68(a) settlement agreements are permitted, there would be no reason for employers to try to do what *Cheeks* prohibited through Rule 41(a)(1)(A)(ii). Employers would simply use Rule 68(a) as an "end run" to accomplish what *Cheeks* forbade. *Mei Xing Yu v. Hasaki Rest., Inc.*, 319 F.R.D. 111, 111 (S.D.N.Y. 2017).

23

III.        **Rule 68 Settlements**

How then does the majority reach the conclusion that Rule 68(a) settlements are valid under the FLSA?

The majority points out that Rule 68(a) judgments are publicly filed on the court docket. Through a leap of logic, it suggests that this public filing amounts to judicial scrutiny. Maj. Op. 17, 27. And this public filing, apparently, assuages any concern that the private settlement agreement violates the FLSA in the manner prohibited by the Supreme Court in *Brooklyn Savings Bank* and *Gangi*. *Id.* at 18, 23, 27. Indeed, according to the majority, public filing alone is enough to distinguish meaningfully "stipulated judgments from private, back-room compromises." *Id.* at 17.

But the "public" filing is not and cannot be the kind of judicial or Department of Labor supervision that the Supreme Court and Congress made mandatory in the FLSA context. It does not give the kind of protection that the Court held the FLSA mandates. There is no way to tell, based on a Rule 68(a) filing, whether the settlement awards plaintiffs damages below the statutory requirement. *See Marek*, 473 U.S. at 6 (Rule 68(a) does not require an "itemize[d list of] the respective amounts being tendered for settlement of the underlying substantive claim"). In other words, the filing of Rule

1 68(a) settlements on the court docket in no way prevents settlements
2 that violate the express provisions of the FLSA.[11]

3      As a result, the majority's holding leads to an absurd outcome.
4 By the terms of Rule 68(a), once an offer of judgment has been made,
5 accepted, and submitted to the court by the parties, the clerk's entry
6 of that judgment is mandatory. *See* Maj. Op. 7-8. And courts are
7 required to enter final judgments on all private Rule 68(a) settlements
8 of FLSA claims. This means that, if the parties in *Brooklyn Savings Bank*
9 or *Gangi* were to come before a district court today, and request that
10 the court enter judgment on their claims under Rule 68(a), the court
11 would have to do so. It would have to do so even though that
12 settlement is illegal under the FLSA. Nothing in the majority's
13 opinion saves its holding from that absurd result.[12]

14      The majority's attempt to avoid that absurd result—through an
15 appeal to the common law of contracts and to Rule 60(b) as ways of
16 avoiding illegal settlements—highlights the untenability of the
17 majority's position. Maj. Op. 29. Placing the onus on a post-judgment

---

[11] Nor can one discern whether the settlement resolves a bona fide dispute, a requirement in the single circuit that has adopted the bona fide dispute exception. *See Bodle*, 788 F.3d at 161, 165.

[12] Indeed, the requirement that Rule 68(a) settlements be filed on the court docket makes matters worse. It renders the majority's attempted distinction between a party's capacity to enter into an agreement and that agreement's enforceability meaningless. *See* Maj. Op. 10 n.31. We are here talking about unsupervised but court-ordered Rule 68(a) settlement agreements. These are court judgments and, hence, are enforceable as such.

motion to cure the judgment's own illegality upends the basic premise of how our judicial system functions. Because the entry of a judgment carries significant legal consequences, there is a strong presumption in favor of "the finality of judgments." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (Rehnquist, C.J., dissenting). That presumption reflects the foundational idea that if "conclusiveness did not attend the judgments of [judicial] tribunals," parties would not "invoke[]" the "aid of [such] tribunals" for "the vindication of rights of person and property." *Southern Pac. R. Co. v. United States*, 168 U.S. 1, 49 (1897). Precisely because of this presumption, parties seeking relief from judgment under Rule 60(b) must generally show "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535 (quotation marks and citations omitted). Had the drafters of Rule 68(a) intended to reverse this presumption and allow the kind of time-consuming challenges the majority suggests could avoid illegal settlements, one would expect that they would have said so explicitly. After all, as the majority notes, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001); *see also* Maj. Op. 24.

In the end, my learned colleagues tip their hand: the majority's opinion is guided by broad policy notions concerning the desirability of Rule 68 settlements in FLSA cases and the delays that prohibiting such unsupervised settlements might bring. *See* Maj. Op. 30-31. Irrespective of the merits of their argument concerning delay, which

1    I find doubtful,[13] the majority is engaging precisely in the kind of

2    broad policy considerations that it correctly and so adamantly rejects

3    as irrelevant for statutory interpretation. The Supreme Court has told

4    us that the FLSA requires supervision of settlements. And the fact that

5    the majority happens to believe, whether correctly or not, that judicial

6    supervision is undesirable cannot change what Congress's statute, as

7    interpreted by the Supreme Court, requires.[14]

8    In sum, there is nothing within Rule 68(a) that limits private

9    parties from making precisely the kind of general private settlements

10    that the High Court, all the circuit courts that have addressed the

11    issue, and the Department of Labor have said the FLSA prohibits. The

12    Rule necessarily conflicts with the federal statute.

13    **CONCLUSION**

14    At the end of the day, everyone who has addressed the issue—

15    from the Supreme Court to the circuit courts to the Department of

16    Labor—agrees that FLSA wage/hour claims cannot be settled by

---

[13]  Consider, for example, the delays that would occur as a result of the Rule 60(b) challenges that the majority invokes to save its result from absurdity.

[14]  The majority's related argument that affirming the district court here would likely require "judicial approval of a variety of settlements that involve vulnerable citizens, such as discrimination suits under Title VII of the Civil Rights Act and § 1983 claims of serious violations of police misconduct," has no merit. Maj. Op. 30. As the Department of Labor made abundantly clear, the FLSA, as read by the Supreme Court, is a "uniquely protective" statute, which—unlike any number of other statutes, including Title VII and § 1983—requires supervision of settlement agreements. *See* Brief of Sec'y of Labor as Amicus Curiae In Support of the District Court's Decision at 6.

private agreement without court, Department of Labor, or similar supervision. And *no* court's precedent—including our own—supports the rule adopted by the majority here: that *all* FLSA wage/hour claims, no matter their content, can be resolved—indeed, can result in a final, binding judgment carrying a federal court's imprimatur—as a result of a private settlement agreement reviewed only by the employer and employee.

That conclusion has no basis in the text, history, design, or purpose of the FLSA, nor indeed in common sense. I do not believe the majority's holding can—or will—withstand Supreme Court scrutiny. I respectfully, but emphatically, dissent.